IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE:<br>SKYPORT GLOBAL COMMUNICATIONS,<br>INC.,<br><br>                Debtor. | §<br>§<br>§<br>§<br>§ | CASE NO. 08-36737-H4-7 |

| | | |
|---|---|---|
| JOANNE SCHERMERHORN, et al.,<br><br>                Appellants,<br><br>v.<br><br>CENTURYTEL, INC., et. al.,<br><br>                Appellees. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-11-1524 |

| | | |
|---|---|---|
| SAMUEL GOLDMAN, et al.,<br><br>                Appellants,<br><br>v.<br><br>JOANNE SCHERMERHORN, et al.,<br><br>                Appellees. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-13-3041 |

| | | |
|---|---|---|
| FRANKLIN CRAIG,<br><br>                Appellant. | §<br>§<br>§<br>§ | CIVIL ACTION NO. H-13-3044 |

| | | |
|---|---|---|
| TRUSTCOMM, INC., et al.,<br><br>                Appellants. | §<br>§<br>§<br>§ | CIVIL ACTION NO. H-13-3047 |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses appeals from fifteen orders entered by the Bankruptcy Court in Adversary No. 10-03150, into which Adversary No. 10-03225 was consolidated. The two

actions consolidated under Adversary No. 10-03150 were filed in response to a state court lawsuit filed on February 12, 2010, by aggrieved investors following entry of the August 12, 2009, Order Confirming Plan of Reorganization, As Modified in <u>In re SkyPort Global Communications, Inc.</u>, No. 08-36737-H4-11.   The fifteen orders being appealed resolved allegations (1) that the filing of the State Court Petition was a direct violation of the injunctive provisions contained in -- and a collateral attack on -- the Confirmation Order and Plan entered in SkyPort's Chapter 11 bankruptcy case; (2) that the state court plaintiffs, Samuel Goldman ("Goldman"), Eric Fryar ("Fryar"), and Franklin Craig ("Craig") (an individual acting in concert with Goldman), and their attorneys violated a Preliminary Injunction entered by the Bankruptcy Court; and (3) that the state court plaintiffs, their attorneys, and Craig are subject to sanctions in the form of attorneys' fees and costs.   Appeal of the fifteen orders at issue have given rise to four civil actions: H-11-1524, H-13-3041, H-13-3044, and H-13-3047, the last three of which are the subject of an agreed order for joint administration under Civil Action No. H-13-3041.[1]   The fifteen orders being appealed and their docket entry numbers in Adversary No. 10-03150 are as follows:

---

[1]<u>See</u> Agreed Order Granting "Opposed Motion of Appellee/Cross-Appellants for Order Approving the Joint Administration -- Under Bankruptcy Appeal Number 4:13-cv-3041 -- of the Three Bankruptcy Appeals Numbered 4:13-cv-3041, 4:13-cv-3044, and 4:13-cv-3047" [Docket #8], Docket Entry No. 17 in Civil Action No. 4:13-cv-3041.

- Order Regarding Reasonableness of Hoover Slovacek, LLP Fees (Doc. 132) and Continuance of Hearing on Motion for Additional Sanctions (Doc. 104), filed August 11, 2010, Docket Entry No. 158;

- Order Directing the Joanne Schermerhorn et al. to Pay $17,800.29 to Hoover Slovacek LLP by October 31, 2010 ("Order Directing Payment to Hoover Slovacek"), filed October 29, 2010, Docket Entry No. 233;

- Order Awarding Additional Sanctions Against Joanne Schermerhorn et al. [Docket No. 104], filed November 9, 2010 ("Order for Additional Sanctions"), Docket Entry No. 242;

- Order Holding Joanne Schermerhorn et al. In Contempt of the June 10, 2010 Preliminary Injunction [Docket Nos. 173 and 177], filed November 9, 2010 ("First Contempt Order"), Docket Entry No. 243;

- Order Disposing of Docket Items 227 and 229, filed December 7, 2010, Docket Entry No. 261;

- Second Order Holding Joanne Schermerhorn et al. in Contempt of the June 10, 2010 Preliminary Injunction [Docket No. 184] ("Second Contempt Order"), filed December 16, 2010, Docket Entry No. 267;

- Order Denying in Part and Continuing in Part Defendant Wilson Vukelich LLP's Motion to Dismiss [Adv. Docket No. 69], filed January 13, 2011, Docket Entry No. 273;

- Order filed March 31, 2011, Docket Entry No. 297;

- Order [Docket No. 293] filed March 31, 2011, Docket Entry No. 298;

- Memorandum Opinion Regarding: (1) Notice of Filing of Redacted Fee Statements of McKool Smith P.C.; (2) Plaintiffs' Certification/Amended Certification of Reasonableness of Fees Submitted by McKool Smith P.C.; and (3) Defendants' Motion for Additional Sanctions [Adv. Doc. Nos. 87, 107, 112 & 103] ("McKool Smith Memorandum Opinion"), filed on March 31, 2011, Docket Entry No. 299;

- Order Relating to: (1) Notice of Filing of Redacted Fee Statements of McKool Smith P.C.; (2) Plaintiffs' Certification/Amended Certification on Reasonableness of Fees Submitted by McKool Smith P.C.; and (3) Defendants' Motion for Additional Sanctions [Adv. Doc. Nos. 87, 107, 112 & 103] ("McKool Smith Order"), filed on March 31, 2011, Docket Entry No. 300;

- Memorandum Opinion Regarding Adversary Docket Numbers 317; 359; 360; 419; 460 and 461 [Adv. Doc. Nos. 317, 359, 360, 419, 460, 461] ("Memorandum Opinion Regarding Third Motion for Contempt"), filed August 7, 2013, Docket Entry No. 690;

- Order Regarding Adversary Docket Numbers 317; 359; 360; 419; 460 and 461 [Adv. Doc. Nos. 317, 359, 360, 419, 460, 461] ("Third Contempt Order"), filed August 7, 2013, Docket Entry No. 691;

- Findings of Fact and Conclusions of Law Regarding the Amount of Fees and Expenses Awarded to the SkyPort Parties [Adv. Doc. No. 691] ("Fee Findings"), filed September 13, 2013, Docket Entry 704;

- Order Regarding the Amount of Fees and Expenses Awarded to the SkyPort Parties [Adv. Doc. No. 691] ("Fee Order"), entered on September 13, 2013, Docket Entry No. 705.

For the reasons explained below, the Bankruptcy Court's orders will all be affirmed, and the four civil actions resulting from the appeals of those orders will be dismissed.

## I.  Factual and Procedural Background

### A.   The Bankruptcy Case

SkyPort Global Communications, Inc., n/k/a TrustComm, Inc. ("SkyPort" or "Reorganized Debtor") was the debtor in a Chapter 11 bankruptcy filed on October 24, 2008, Case No. 08-36737-H4-11 (the "Bankruptcy Case") in the United States Bankruptcy Court for the

Southern District of Texas, Houston Division (the "Bankruptcy Court"). On August 12, 2009, the Bankruptcy Court entered its Order Confirming the Plan of Reorganization As Modified ("Confirmation Order").[2] Article 6.3 of the Plan provides for a merger of SkyPort with its sole shareholder, SkyComm Technologies Corporation ("SkyComm").[3] Once merged, all shares of stock owned by SkyComm's shareholders were to be cancelled, and all shares of the Reorganized Debtor were to be re-issued to Balaton Group, Inc.[4] The Confirmation Order enjoined derivative claims filed on behalf of SkyPort or SkyComm, but did not enjoin direct claims against third parties.[5]

## B.   The State Court Action

On February 12, 2010, 49 named plaintiffs referred to here as the "Schermerhorn Parties,"[6] filed Plaintiffs' Original Petition,

---

[2]See Confirmation Order, Docket Entry No. 337 in Bankruptcy Case No. 08-36737-H4-7, and Docket Entry No. 4-5 in Civil Action No. 4:11-cv-1524.

[3]See Chapter 11 Plan of Reorganization, Exhibit A to Docket Entry No. 337 in Bankruptcy Case No. 08-36737-H4-7, and Docket Entry No. 4-5 in Civil Action No. 4:11-cv-1524, p. 3 Article 1 ("(7) the Equity Interest Holder of the Debtor will have its stock cancelled and the Debtor will be merged into SkyComm to form the Reorganized Debtor").

[4]Id. at 11-12 Article 6.3.

[5]See Confirmation Order, Docket Entry No. 337 in Bankruptcy Case No. 08-36737-H4-7, and Docket Entry No. 4-5 in Civil Action No. 4:11-cv-1524, pp. 8-9, ¶¶ 30-32.

[6]The 49 named plaintiffs comprising the Schermerhorn Parties are: 3791068 Canada, Inc, Aran Asset Management SA, Diya Al-Sarraj,
(continued...)

Request for Disclosure, and Request for Production of Documents (the "Petition") commencing Cause No. 2010-09675, <u>Joanne Schermerhorn et al. v. CenturyTel, Inc., et al.,</u> (the "State Court Action") in the 113th Judicial District Court, Harris County, Texas (the "State Court").  The State Court Petition sought $32 million in damages for various misdeeds allegedly committed in connection with investments in and management of the Reorganized Debtor, SkyPort, and its parent, SkyComm, including breach of fiduciary duty, breach of contract, oppression, fraud, aiding and abetting fraud, securities fraud, negligent misrepresentation, and civil conspiracy.  The Petition asserted fifteen counts on behalf of some or all of the plaintiffs against some or all of twelve named defendants:  CenturyTel, Inc. (a/k/a CenturyLink); Clarence Marshall; R. Stewart Ewing, Jr.; Michael E. Maslowski;

---

[6](...continued)
Ben Ariano, BLF Partners, Ltd., BMT Grantor Trust, Joseph Baker, Stanley Beraznik, David Currie, Draco Capital, Inc., Don Dui, ECAL Partners, Ltd., Tracy Elstein, Eosphoros Asset Management, Inc., Robert Foote, Wayne C. Fox, Gloster Holdings, LLC, Chet Gutowsky, Brian W. Harle, Jason Charles Togut Trust, John Llewellyn, John A. Rees, Cheskel Kahan, Darshan Khurana, Barry Klein, Bella Krieger, Joseph A. Lopez, Lynn Joyce Elstein Trust, Robert Mendel, Byron Messier, Movada, Ltd., Mateo Novelli, John E. Panneton, Edward Pascal, Martin Pollak, Puddy, Ltd., Melvyn Reiser, Rig III Fund, Ltd., Joanne Schermerhorn, Semper Gestion SA, Sequoia Aggressive Growth Fund, Ltd., Sequoia Diversified Growth Fund, Ltd, Lawrence Solomon, Charles Stack, Michael Stein, Peter Taylor, David Togut, John K. Waymire, and Whizkid Venture, LLC.  <u>See</u> Plaintiffs' Original Petition, Request for Disclosure, and Request for Production of Documents attached to Notice of Removal, Docket Entry No. 1 in Adversary No. 10-03150, and Docket Entry No. 4-12 through 4-14 in Civil Action No. 4:11-cv-1524.  The Schermerhorn Parties are also the named plaintiffs in Adversary No. 10-03150 and the named defendants in Adversary No. 10-03225.

Harvey P. Perry (collectively, the "CenturyTel Defendants"); Robert Kubbernus; Balaton Group, Inc.; Bankton Financial Corporation; Bankton Financial Corporation, L.L.C.; Clear Sky Management, Inc.; Clear Sky Investments, L.P. (collectively, the "Kubbernus Defendants");[7] and Wilson Vukelich, L.L.P. ("Wilson Vukelich").

## C.  Removal of State Court Action to the Bankruptcy Court

### 1.  Removal and Initiation of Adversary No. 10-03150 by the CenturyTel Defendants and the Kubbernus Defendants Seeking Dismissal and Sanctions Against Plaintiffs

On March 26, 2010, the CenturyTel Defendants and the Kubbernus Defendants removed the State Court Action to the Bankruptcy Court, thus commencing Adversary No. 10-03150.[8]  On the same day, McKool Smith P.C. ("McKool Smith"), acting on behalf of the removing defendants, filed a Motion to Dismiss or, Alternatively for Summary Judgment and for Sanctions, arguing that the State Court Petition constituted a collateral attack on the order confirming SkyPort's Chapter 11 Plan because it not only asserted derivative claims on

---

[7]See Plaintiffs' Original Petition, Request for Disclosure, and Request for Production of Documents attached to Notice of Removal, Docket Entry No. 1 in Adversary No. 10-03150, and Docket Entry No. 4-12 through 4-14 in Civil Action No. 4:11-cv-1524.

[8]Notice of Removal, Docket Entry No. 1 in Adversary No. 10-03150, and Docket Entry No. 4-12 in Civil Action No. 4:11-cv-1524. Although Wilson Vukelich did not sign the Notice of Removal, the Bankruptcy Court construed the notice to remove all of the claims asserted in the State Court Action, not just the claims asserted against the Non-Wilson Vukelich defendants.  See Memorandum Opinion Relating to Motion to Dismiss Adversary Proceeding Filed by All Defendants Except the Law Firm of Wilson Vukelich LLP [Adv. Docket No. 2], Docket Entry No. 272 in Adversary No. 10-03150, and Docket Entry No. 4-123 in Civil Action No. 4:11-cv-1524.

behalf of SkyPort, the Reorganized Debtor, but also sought control of SkyPort, the Reorganized Debtor.[9]

    2.   <u>Motion to Remand and to Sanction Removing Defendants</u>

On April 19, 2010, the Schermerhorn Parties moved to remand arguing that:  (1) the Petition asserted direct claims that were not released by the Confirmation Order; (2) the State Court Petition was not a collateral attack on the Confirmation Order or the Plan; (3) the Bankruptcy Court had no jurisdiction over direct claims asserted in the State Court Action; and (4) sanctions should be imposed, if at all, against the removing defendants.[10]

    3.   <u>Initiation of Adversary No. 10-03225 by SkyPort Global Communications, Inc., the Balaton Group, Inc., and Robert Kubbernus Seeking Declaratory and Injunctive Relief</u>

On May 18, 2010, the law firm of Hoover Slovacek L.P. ("Hoover Slovacek"), acting on behalf of SkyPort the Reorganized Debtor, and two of the defendants named in the State Court Action -- the Balaton Group, Inc. and Robert Kubbernus (collectively, "the SkyPort Parties") -- filed Plaintiff's Original Complaint and Application for Preliminary Injunction and Permanent Injunction, thus initiating Adversary No. 10-03225 against the Schermerhorn

---

[9]Motion to Dismiss, Or, Alternatively, for Summary Judgment, and for Sanctions, Docket Entry No. 2 in Adversary No. 10-03150, and Docket Entry No. 4-15 in Civil Action No. 4:11-cv-1524.

[10]Plaintiffs' Motion to Remand or Alternatively to Abstain, and for Sanctions, Docket Entry No. 14 in Adversary No. 10-03150, and Docket Entry No. 4-20 in Civil Action No. 4:11-cv-1524.

Parties.[11]  The SkyPort Parties sought:  (1) an order consolidating Adversary Nos. 10-03150 and 10-03225;[12] (2) "a declaratory judgment . . . that [the Schermerhorn Parties'] Claims are property of the Reorganized Debtor and/or barred by the Plan Injunction;" and (3) "an order enjoining [the Schermerhorn Parties] from any act to obtain possession or exercise control over the Reorganized Debtor."[13]

### 4.   May 27, 2010, Hearing and Resulting Orders

On May 27, 2010, the Bankruptcy Court conducted a hearing on four motions:  the motion to dismiss and to award sanctions against the Schermerhorn Parties filed by all the defendants in the State Court Action except Wilson Vukelich, the motion to remand and to sanction the removing defendants filed by the Schermerhorn Parties, and the motion for preliminary injunction and motion to consolidate the two adversary actions, Adversary Nos. 10-03150 and 10-03225, filed by the SkyPort Parties.[14]  Because none of the parties objected to the motion to consolidate, the Bankruptcy Court granted

---

[11]See Docket Entry No. 1 in Adversary No. 10-03225, and Docket Entry No. 4-317 in Civil Action No. 4:11-cv-1524.

[12]Id. at 6 ¶ 7.

[13]Id. at 13-14, ¶¶ 40(b) and (c).

[14]See Transcript, Docket Entry No. 75 in Adversary No. 10-03150, and Docket Entry Nos. 4-39 through 4-45 in Civil Action No. 4:11-cv-1524.

that motion and ordered all pleadings to be filed in Adversary
No. 10-03150.[15]

      (a)  Grant of Motion to Dismiss and Denial of Motion to
            Remand

During the May 27, 2010, hearing the Bankruptcy Court held
that it had subject matter jurisdiction over all of the removed
claims because the dispute between the parties pertained to "the
implementation, interpretation and execution of the [P]lan that
[the Bankruptcy Court] confirmed in August of 2009."[16]   The
Bankruptcy Court explained that the plaintiffs in the State Court
Action sought, _inter alia_, appointment of a receiver to take over
the Reorganized Debtor — relief that constituted a direct attack on
the Plan and the Confirmation Order.[17]   The Bankruptcy Court

_____

    [15]_Id._ at 301:18-25 (asking parties to submit a written order
consolidating the two adversary actions within seven days).  _See
also_ Unopposed Order Granting Motion to Consolidate Adv. No. 10-
03225 with Adv. No. 10-03150 entered on June 9, 2010, Docket Entry
No. 84 in Adversary No. 10-03150, Docket Entry No. 4-48 in Civil
Action No. 4:11-cv-1524, and Docket Entry No. 2-30 in Civil Action
No. 4:13-cv-3041.

    [16]Transcript, Docket Entry No. 75 in Adversary No. 10-03150,
and Docket Entry No. 4-44 in Civil Action No. 4:11-cv-1524,
p. 280:23-25.  _See also id._ at 289:5-6 ("So there's no question
I've got jurisdiction over this action."); 289:24-290:3 ("I've got
jurisdiction because it pertains to the implementation,
interpretation, and enforcement of the plan, because it attempts to
bring derivative causes of action in violation of the release
provision.").

    [17]_Id._ at 283:12-17 ("[T]his pleading that was filed in State
Court does, in fact, attempt to modify and revoke the confirmed
plan.  It says Mr. Kubbernus duped me, tricked me, lied to me.  And
                                                (continued...)

explained further that some of the claims asserted in the Petition
should be dismissed with prejudice because prosecuting those claims
would violate the Plan and Confirmation Order entered in SkyPort's
Chapter 11 case, but that other claims should be dismissed without

---

[17](...continued)
asked a State Court judge to appoint a receiver or someone else to
take over SkyPort, the reorganized Debtor.   That's a clear attack
on my plan."); 284:6-11 ("I expressly conclude that this lawsuit
filed in Harris County is a -- does attempt to modify or revoke the
plan because it is making allegations that fly against the findings
of fact and conclusions of law I made in order to convince a State
Court judge to take action, specifically to appoint a receiver on
the reorganized SkyPort."); 287:16-288:7 ("To tell me that this
pleading before me doesn't seek relief against SkyPort, doesn't
seek to appoint a Trustee in SkyPort, is an incredible argument
that has absolutely no merit.   [The Petition expressly alleges:]
'Wherefore, all the Plaintiffs pray that the Court enter an order,
judgment, and decree granting the following relief against the
Kubbernus Defendants, and order appointing a provisional director,
Trustee, managing agent, fiscal agent, or other Court-appointed
fiduciary for SkyComm and SkyPort.'   Pretty plain meaning there.
There's no ambiguity there.   What these Plaintiffs were trying to
do in State Court was get that State Court judge or a jury to
appoint a provisional director, or Trustee, or managing agent of
SkyPort and SkyComm.   And that's a direct violation of the very
intent of my plan that I confirmed, which is that SkyPort and
SkyComm were merged."); 289:24-290:21 ("So in the first instance,
I've got jurisdiction because it pertains to the implementation,
interpretation, and enforcement of the plan, because it attempts to
bring derivative causes of action in violation of the release
provision.   And then in the alternative, even if all the causes of
action are personal, it still goes to the implementation,
enforcement, and execution of the plan because it contains
allegations that directly contradict findings of fact and
conclusions of law that I make that the Plaintiffs had the
opportunity to deal with and chose not to.   So they are bound by
principals of *res judicata* and collateral estoppel.   And that
pleading that is before m[e n]ow that was filed in Harris County
can't stand.   Was the removal correct?   Yes, it was.   You remove
the entire lawsuit to this Court.   And that's a legal conclusion I
made.   There's ample case law for that. . . . Should I remand this
suit?   No way.   It has got allegations in it that should not be
made, that the Plaintiffs are barred from making, not the least of
which is that they are presently holding shares of SkyComm.").

prejudice because they were not barred by the confirmed plan.   The Bankruptcy Court took under advisement the issue of which claims to dismiss with and without prejudice.[18]

On January 13, 2011, the Bankruptcy Court issued a 108-page Memorandum Opinion[19] and corresponding Order stating:

> Due to the sheer number of claims asserted in the Petition, the Court has organized them into a table for clarity, below.  The first column lists those Counts and Parts of Counts which are not barred by the Confirmation Order and which will be remanded to the Texas state court.  The second column lists those Counts and Parts of Counts which are derivative claims that may not be brought, either because they violate the Confirmation Order or because the Plaintiffs lack standing to bring such a claim.  The Counts and Parts of Counts in Column 2 will be dismissed with prejudice.  The third column lists those Counts and Parts of Counts which are barred because they are based on acts or omissions of the Defendants during SkyPort's Chapter 11 case (which was filed on October 24, 2008).  These Counts or Parts of Counts violate the Confirmation Order, and, as such, will also be dismissed with prejudice.[20]

---

[18]Id. at 293:10-22 ("Now I'm going to dismiss with prejudice the derivative causes of action.  I'm going to dismiss without prejudice the personal causes of action. . . I'm certainly going to dismiss without prejudice any causes of action that were brought, pursuant to the carve out.  But the derivative causes of action which were extinguished, need to be dismissed with prejudice.  I'm not going to say tonight.  I'm going to sit down and go through each and every one of them.  And I'll issue a written ruling.  So that if people want to appeal me, they can.").

[19]See Memorandum Opinion Relating to Motion to Dismiss Adversary Proceeding Filed by All Defendants Except the Law Firm of Wilson Vukelich LLP [Adv. Docket No. 2], Docket Entry No. 272 in Adversary No. 10-03150, and Docket Entry No. 4-123 in Civil Action No. 4:11-cv-1524, Exhibit A, Table 1.

[20]See Order Regarding Motion to Dismiss Adversary Proceeding Filed by All Defendants Except Wilson Vukelich LLP [Adv. Docket No. 2], Docket Entry No. 274 in Adversary No. 10-03150, and Docket Entry No. 4-125 in Civil Action No. 4:11-cv-1524, pp. 2-3.

The corresponding order granted in part and denied in part the motion to dismiss, and

> ORDERED that subject to a hearing to be held in this Court on March 1, 2011, the Motion to Dismiss is denied in part insofar as the Counts and Parts of Counts listed in Column 1 of the Table of Claims are not dismissed but rather will be remanded to the Texas state court.[21]

The Bankruptcy Court noted that "[t]he hearing on March 1, 2011, will be held to determine if a motion to dismiss filed by Wilson Vukelich, LLP should be granted on solely the grounds of improper service."[22]   Neither the Bankruptcy Court's January 13, 2011, Memorandum Opinion nor its corresponding Order have been appealed.

      (b)   Grant of Motion for Preliminary Injunction

During the May 27, 2010, hearing the Bankruptcy Court concluded that the elements for granting a preliminary injunction had been met.[23]  The Bankruptcy Court asked counsel for the removing defendants to draft an order for Preliminary Injunction to which counsel for the Schermerhorn Parties could sign off as to form only.[24]  On June 10, 2010, the Bankruptcy Court conducted a hearing and entered its Order Granting Application for Preliminary Injunction which

---

[21]Id. at 5.

[22]Id. n.2.

[23]Transcript, Docket Entry No. 75 in Adversary No. 10-03150, Docket Entry No. 4-45 in Civil Action No. 4:11-cv-1524, p. 301:2-3. See also id. at Docket Entry No. 4-44 in Civil Action No. 4:11-cv-1524, pp. 290:22-293:7.

[24]Id. at 301:8-11.

ORDERED that until further Order of this Court, temporary
injunction is granted; it is further

ORDERED that Plaintiffs are temporarily enjoined from:
pursuing any and all claims or causes of action,
derivative or direct, against all of the Defendants, and;
it is further

ORDERED that Plaintiffs may contact former and current
vendors, employees, and customers of the Debtor *if and
only if* a written request is made by Plaintiffs' counsel
to counsel for SkyPort, and counsel for SkyPort either
a) agrees to the proposed contact or b) does not respond
within 1 business day.  If counsel for SkyPort refuses in
writing to agree to the proposed contact and the
Plaintiffs wish to contact that person, Plaintiffs may
contact this Court's case manager and, without motion,
set an expedited hearing within two business days to
adduce testimony and evidence that the contact should be
permitted.  The party who does not prevail at that
hearing will be responsible for paying the opposing
party's reasonable attorneys' fees and costs in relation
to that hearing; and it is further

ORDERED that the Plaintiffs shall strictly comply with
all terms and conditions of the Order Confirming Plan
referred to above as well as the plan and modification
attached thereto.[25]

The Preliminary Injunction has not been appealed.

      (c)   Sanctions Ordered Against Schermerhorn Parties for
               Filing State Court Action

During the May 27, 2010, hearing the Bankruptcy Court

concluded that an award of sanctions against the plaintiffs in the

State Court Action, i.e., the Schermerhorn Parties, was warranted,

and that appropriate sanctions would minimally include attorneys'

fees and expenses reasonably incurred by the defendants "in getting

---

[25]Order Granting Application for Preliminary Injunction, Docket
Entry No. 86 in Adversary No. 10-03150, and Docket Entry No. 4-51
in Civil Action No. 4:11-cv-1524.

-14-

the Motion to Dismiss granted."[26]   The Bankruptcy Court told the parties that "to the extent that any additional [sanc]tions are sought, over and above reasonable attorneys fees and expenses, file a separate pleading, so that parties can see what is being sought. And I'll set that for a hearing."[27]   This ruling of the Bankruptcy Court resulted in issuance of five orders being appealed: (1) Order Regarding Reasonableness of Hoover Slovacek Fees, Docket Entry No. 158; (2) Order Directing Payment to Hoover Slovacek, Docket Entry No. 233; (3) Order for Additional Sanctions, Docket Entry No. 242; (4) McKool Smith Memorandum Opinion, Docket Entry No. 299; and (5) McKool Smith Order, Docket Entry No. 300.[28]

> 5. <u>First Two Orders of Contempt for Violating the Preliminary Injunction</u>

> (a)   First Contempt Order For Contacting Debtor's Vendors

On September 24, 2010, SkyPort filed a motion asking the Bankruptcy Court to hold the Schermerhorn Parties in contempt of

---

[26]Transcript, Docket Entry No. 75 in Adversary No. 10-03150, and Docket Entry No. 4-44 in Civil Action No. 4:11-cv-1524, p. 294:6.  <u>See also id.</u> at 294:15-19 ("But with respect to the attorneys fees and time spent, and any costs incurred for bringing the Motion [to] Dismiss, I will impose sanctions at a minimum of reasonable attorneys fees and costs.  Those'll be determined at a separate hearing if the parties can't agree.  And I'll give you a hearing date.").

[27]Transcript, Docket Entry No. 75 in Adversary No. 10-03150, and Docket Entry No. 4-44 in Civil Action No. 4:11-cv-1524, p. 294:20-23.

[28]Notice of Appeal to the United States District Court, Docket Entry No. 1 in Civil Action No. 4:11-cv-1524.

court for violating the June 10, 2010, Preliminary Injunction by contacting SkyPort's former accounting firms, Hein & Associates ("H&A") and Deloitte Touche.[29]   On October 14-15, 2010, the Bankruptcy Court conducted a hearing _inter alia_ on the motion for contempt.[30]   At the hearing the Bankruptcy Court found that the Schermerhorn Parties, through their counsel Goldman and Fryar, violated the Preliminary Injunction by contacting a former SkyPort vendor, H&A.[31]   The Bankruptcy Court ordered Goldman and Fryar to pay the reasonable attorneys' fees and costs incurred by the defendants in prosecuting the motion for contempt.[32]

---

[29]Motion by SkyPort Global Communications, Inc. that Joanne Schermerhorn, _et al._ and Their Counsel of Record Appear and Show Cause Why They Should Not Be Held in Contempt of the June 10, 2010 Preliminary Injunction, Docket Entry No. 173 in Adversary No. 10-03150, and Docket Entry No. 4-96 in Civil Action No. 4:11-cv-1524, ¶¶ 12-15.

[30]Transcript of October 14-15, 2010, Hearing, Docket Entry Nos. 225-226 in Adversary No. 10-03150, and Docket Entry Nos. 4-107 through 4-114 in Civil Action No. 4:11-cv-1524.

[31]Transcript, October 15, 2010, Hearing, Docket Entry No. 4-110, p. 30:12-14 ("I make a legal conclusion that the Plaintiffs through their Counsel at Mr. Goldman's office contacted former vendors, these two accounting firms."), pp. 33:21-34:3 ("I just can't accept as creditable testimony that vendor was construed as someone who we didn't think we had to make written request because we didn't construe an accountant as a vendor because that vendor was providing learned services.  So my legal conclusion is that the Preliminary Injunction has been violated with respect to that.").

[32]_Id._ at Docket Entry No. 4-111, pp. 56:23-57:2 ("So, I am going to grant the Motion.  I am going to require that Plaintiff's Counsel, specifically Mr. Goldman's firm, Samuel Goldman and Associates, pay the attorneys' fees, reasonable attorneys' fees and costs incurred by the Movants for having to file the motion.").

On November 9, 2010, the Bankruptcy Court entered its First Contempt Order holding the Schermerhorn Parties in contempt of the June 10, 2010, Preliminary Injunction and ordering that

> as sanctions for the above-described contempt Sam Goldman and Eric Fryar are adjudged jointly and severally liable to Skyport Global Communications, Inc. for (i) the attorney fees and costs incurred in the preparation and prosecution of the motion assigned docket number 173, and (ii) the time spent by Douglas Whitworth responding to such contempt.[33]

On December 7, 2010, the Bankruptcy Court entered its disposal order sanctioning Goldman and Fryar in the amount of $10,200 in attorney's 'fees and $3,125 in costs, for a total amount of $13,325, to be paid within eleven days.[34]  Plaintiffs are appealing the First Contempt Order and the Disposal Order.

      (b)   Second Contempt Order for Attempting to File Fraud on the Court Pleading

On September 27, 2010, the Schermerhorn Parties filed Plaintiffs' Request to Proceed with Adversary Proceeding for Fraud on the Court.[35]  On September 29, 2010, the SkyPort Parties filed

---

[33]Docket Entry No. 243 in Adversary No. 10-03150, and Docket Entry No. 4-118 in Civil Action No. 4:11-cv-1524.

[34]Order Disposing of Docket Items 227 and 229, Docket Entry No. 261 in Adversary No. 10-03150, and Docket Entry No. 4-120 in Civil Action No. 4:11-cv-1524.  Docket Entry No. 227 in Adversary No. 10-03150 is Docket Entry No. 4-270 in Civil Action No. 4:11-cv-1524, the proposed order of contempt that the Bankruptcy Court signed on November 9, 2010, thus becoming Docket Entry No. 243 in Adversary No. 10-03150, and Docket Entry No. 4-118 in Civil Action No. 4:11-cv-1524.

[35]See Transcript of Hearing held October 15, 2010, Docket Entry No. 226 in Adversary No. 10-03150, and Docket Entry No. 4-111 in Civil Action 4:11-cv-1524, p. 57:20 (Bankruptcy Court acknowledges that request was filed on September 27, 2010).

a motion asking the Bankruptcy Court to hold the Schermerhorn Parties in contempt of court for violating the June 10, 2010, Preliminary Injunction by filing Plaintiffs' Request to Proceed with Adversary Proceeding for Fraud on the Court.[36] On November 29, 2010, the Bankruptcy Court conducted a hearing _inter alia_ on the SkyPort Parties' Second Motion for Contempt.[37] The Bankruptcy Court found at the hearing that the filing of the request to proceed with adversary proceeding for fraud on the court was sanctionable as a violation of the June 10, 2010, Preliminary Injunction.[38] On December 16, 2010, the Bankruptcy Court signed its Second Contempt Order holding the Schermerhorn Parties in contempt of the June 10, 2010, Preliminary Injunction, striking the fraud on the court pleading from the record, holding the Schermerhorn Parties jointly and severally liable for attorney's fees and costs that the SkyPort

---

[36]_Supplemental_ Motion by SkyPort Global Communications, Inc. that Joanne Schermerhorn, _et al._ Appear and Show Cause Why They Should Not Be Held in Contempt of the June 10, 2010 Preliminary Injunction, Docket Entry No. 184 in Adversary No. 10-03150, and Docket Entry No. 4-100 in Civil Action No. 11-cv-1524, pp. 5-6 ¶10.

[37]Transcript of October 14-15, 2010 Hearing, Docket Entry Nos. 225-226 in Adversary No. 10-03150, and Docket Entry Nos. 4-107 through 4-114 in Civil Action No. 11-cv-1524.

[38]Transcript, October 15, 2010 Hearing, Docket Entry No. 4-111, p. 57:8-17 ("With respect to the Complaint, the request, as I said, I think it was pursuing the cause of action and so I've got all attorneys for the Plaintiffs signing off on this pleading and then telling me that I've got jurisdiction over a suit, when I was told back in April that I didn't have jurisdiction over causes of action relating to pre-confirmation fraud, and so there all four attorneys who signed off get to be held liable for the attorneys' fees that the Plaintiffs have incurred or the Movants have incurred in prosecuting the motion.").

Parties incurred preparing and prosecuting their Second Motion for Contempt.[39]  The Schermerhorn Parties are appealing this order.

6.   <u>Wilson Vukelich Motion to Dismiss</u>

On May 26, 2010, the day before the Bankruptcy Court's May 27, 2011, hearing, Wilson Vukelich, a Canadian law firm, filed a motion to dismiss the claims asserted against it in the State Court Action for improper service of process, lack of personal jurisdiction, and improper venue or <u>forum non conveniens</u>.[40]  On January 13, 2011, the Bankruptcy Court issued an Order Denying in Part and Continuing in Part Defendant Wilson Vukelich's Motion to Dismiss.[41]   The Bankruptcy Court stated:

> [T]he Wilson Vukelich Motion to Dismiss is continued in part insofar as the Court concludes that Wilson Vukelich has not been properly served with process in this adversary proceeding but also concludes that Plaintiffs should have thirty (30) days to properly serve Wilson Vukelich with process.[42]

On February 11, 2011, the plaintiffs filed an Emergency Motion for Extension of Time to Effect Service and to Continue Hearing (the "Motion for Extension").[43]  The Bankruptcy Court continued the

---

[39]Docket Entry No. 267 in Adversary No. 10-03150, and Docket Entry No. 4-121 in Civil Action No. 4:11-cv-1524, p. 2.

[40]<u>See</u> Defendant Wilson Vukelich LLP's Motion to Dismiss, Docket Entry No. 69 in Adversary No. 10-03150, and Docket Entry No. 4-38 in Civil Action No. 4:11-cv-1524, pp. 2-3, 10-21.

[41]Docket Entry No. 273 in Adversary No. 10-03150, and Docket Entry No. 4-124 in Civil Action No. 4:11-cv-1524.

[42]<u>Id.</u> at 13.

[43]Docket Entry No. 280 in Adversary No. 10-03150, and Docket Entry No. 4-126 in Civil Action No. 4:11-cv-1524.

time to serve Wilson Vukelich to March 1, 2011, and continued the hearing date to March 8, 2011.  At the March 8, 2011, hearing Wilson Vukelich argued that it had not been properly served, and the Bankruptcy Court agreed.[44]

On March 16, 2011, the Schermerhorn Parties filed a motion urging the Bankruptcy Court not to sign the proposed order of dismissal submitted by Wilson Vukelich but, instead, to sign a counter-order that they had prepared because the Wilson Vukelich order, inter alia, failed to state that the dismissal was without prejudice.[45]

On March 31, 2011, the Bankruptcy Court entered two orders relating to the Wilson Vukelich motion to dismiss.  The first Order, Docket Entry No. 297, denied the Schermerhorn Parties' Motion for Extension and granted the Wilson Vukelich Motion to Dismiss, expressly finding that the plaintiffs had failed to properly serve Wilson Vukelich.[46]  This Order also provided that

> The Court's Order Regarding Motion to Dismiss Adversary Proceeding Filed by All Defendants Except Wilson Vukelich LLP entered January 13, 2011 [Adv. Docket No. 274] is modified to provide that all claims set forth in Column 1

---

[44]Transcript of March 8, 2011 Hearing, Docket Entry No. 289 in Adversary No. 10-03150, and Docket Entry No. 4-128 in Civil Action No. 4:11-cv-1524, pp. 6:3-11:14.

[45]Motion of the Schermerhorn Parties for Entry of Order [Relates to Doc. No. 273 and 292], Docket Entry No. 293 in Adversary No. 10-03150, and Docket Entry No. 4-129 in Civil Action No. 4:11-cv-1534.

[46]Docket Entry No. 297 in Adversary No. 10-03150, and Docket Entry No. 4-131 in Civil Action No. 4:11-cv-1524, p. 3.

of the Table of Claims that were to be remanded to state court now excludes all claims asserted against Wilson Vukelich LLP, which claims are DISMISSED without prejudice.[47]

The second Order, Docket Entry No. 298, disposed of the Schermerhorn Parties' Motion for Entry of Order [Docket Entry No. 293], stating that "[t]he Motion of the Schermerhorn Parties for Entry of Order is DENIED except that the dismissal shall be 'without prejudice.'"[48]

The Schermerhorn Parties have appealed the Bankruptcy Court's three orders relating to Wilson Vukelich's motion to dismiss, i.e., the Order Denying in Part and Continuing in Part Wilson Vukelich's Motion to Dismiss, entered on January 13, 2011, and the two orders entered on March 31, 2011.

    7.  Order Remanding Certain Claims to State Court

On April 19, 2011, the Bankruptcy Court entered an Order Remanding Causes of Action to State Court.[49]  The Order states:

> Given that on March 31, 2011, this Court granted the Wilson Vukelich Motion to Dismiss for lack of proper service, the Court now concludes that the counts, and parts of counts, set forth in Column 1 of the Table of Claims should be remanded to the Texas state court—expressly excluding the counts listed in Column 1 brought against Wilson Vukelich, which this Court dismissed without prejudice in its order of March 31,

---

[47]Id.

[48]Docket Entry No. 298 in Adversary No. 10-03150, and Docket Entry No. 4-132 in Civil Action No. 4:11-cv-1524.

[49]Docket Entry No. 312 in Adversary No. 10-03150, and Docket Entry NO. 4-135 in Civil Action No. 4:11-cv-1524.

2011. Accordingly, those counts, and parts of counts, now being remanded to Texas state court concern all Defendants except Wilson Vukelich. And, because this Court dismissed the counts listed in Column 1 against Wilson Vukelich without prejudice, the Plaintiffs are free, once remand is effectuated, to bring in Wilson Vukelich as an additional party-defendant in the Texas state court (provided, of course, that the Plaintiffs properly serve Wilson Vukelich pursuant to applicable law and provided that applicable law does not bar the Plaintiffs from adding Wilson Vukelich as a party-defendant). It is therefore:

ORDERED that the Counts, and Parts of Counts, set forth in Column 1 of the Table of Claims attached to this Order as Exhibit A are remanded to the Texas state court—save and except the Counts in Column 1 brought against Wilson Vukelich.[50]

The Bankruptcy Court's Order Remanding Causes of Action to State Court has not been appealed.

8.  <u>Motion to Dissolve Preliminary Injunction and Third Order of Contempt for Violating the Preliminary Injunction</u>

On April 28, 2011, the Schermerhorn Parties filed a motion to dissolve the June 10, 2010, Preliminary Injunction.[51] Because the motion to dissolve was opposed, the Bankruptcy Court held a hearing on July 7, 2011, at which SkyPort's counsel reported the discovery of 46 additional alleged violations of the June 10, 2010, Preliminary Injunction.[52] The Bankruptcy Court continued the

---

[50]<u>Id.</u> at 3.

[51]Motion of Schermerhorn Parties to Dissolve Injunction [Relates to Doc. #86], Docket Entry No. 317 in Adversary No. 10-03150, and Docket Entry No. 2-99 in Civil Action No. 4:13-cv-3041.

[52]Transcript of Hearing on Motion to Dissolve Injunction, Docket Entry No. 370 in Adversary No. 10-03150, and Docket Entry No. 2-120 in Civil Action No. 4:13-cv-3041, p. 12:14-20.

hearing, and on July 13, 2011, the SkyPort Parties filed their third motion for contempt ("SkyPort's Third Motion for Contempt"),[53] which they amended on October 6, 2011.[54]  The Third Motion for Contempt alleged numerous separate violations of the June 10, 2010, Preliminary Injunction, and sought sanctions against:  (1) the Schermerhorn Parties, Craig, and Goldman for e-mails between Craig and SkyPort's former president, Dawn Cole ("Cole"); (2) Goldman for testifying falsely at the October 14, 2010, hearing that he had not communicated with Cole since June 10, 2010; and (3) the Schermerhorn Parties, Goldman, and Fryar for failing to file an amended petition in the state court action allegedly in violation of the remand order.  SkyPort's Third Motion for Contempt sought attorney's fees and costs incurred to bring and prosecute the motion, attorney's fees and costs that the SkyPort Parties incurred

---

[53]Motion by SkyPort Global Communications, Inc. (1) That Joanne Schermerhorn, *et al.*, Sam Goldman, and Franklin Craig Show Cause Why They Should Not Be Held in Contempt of the June 10, 2010, Preliminary Injunction, and (2) That Sam Goldman, Franklin Craig, an Officer of Sequoia Aggressive Growth Fund, Ltd., an Officer of Sequoia Diversified Growth Fund, Ltd., an Officer of Rig Fund III, Ltd., an Officer of Aran Asset Management SA, and an Officer of Semper Gestion SA Appear in Person Before this Court on August 5, 2011 at 9:00 A.M., Docket Entry No. 359 in Adversary No. 10-03150, and Docket Entry No. 2-114 in Civil Action No. 4:13-cv-3041.

[54]Amended Motion by SkyPort Global Communications, Inc. (1) That Joanne Schermerhorn, *et al.*, Sam Goldman, and Franklin Craig Show Cause Why They Should Not Be Held in Contempt of the June 10, 2010, Preliminary Injunction, and (2) That Sam Goldman, Franklin Craig, an Officer of Sequoia Aggressive Growth Fund, Ltd., an Officer of Sequoia Diversified Growth Fund, Ltd., an Officer of Rig Fund III, Ltd., an Officer of Aran Asset Management SA, and an Officer of Semper Gestion SA Appear in Person Before this Court on August 5, 2011 at 9:00 A.M., Docket Entry No. 419 in Adversary No. 10-03150, and Docket Entry No. 2-137 in Civil Action No. 4:13-cv-3041.

responding to the unamended State Court Petition, responding to discovery in the remanded State Court Action, and responding to the motion to dissolve preliminary injunction and seeking a permanent injunction, punitive damages in the amount of $250,000, and posting of a bond of not less than $250,000 to secure payment of damages and sanctions in the event of any future violations of the Bankruptcy Court's injunctions.[55]

On October 31, 2011, the Bankruptcy Court denied the motion to dissolve and continued the hearing to March 8, 2012, to consider, inter alia, the propriety and extent of some form of permanent injunction, and ordering Goldman and Craig to appear at the March 8, 2012, hearing.[56]

On March 8, 2012, the Bankruptcy Court began a hearing on, inter alia, the motion to dissolve and third motion for contempt, which continued on March 9, April 18 and 20, May 1 and 2, June 5 and 6, August 28, 29, and 30, November 27, 28, 29 and 30, 2012, and on January 25 and February 7, 2013.[57]

On August 7, 2013, more than two years after entering its Order Remanding Causes of Action to State Court on April 19, 2011,[58]

---

[55]Id. at 9-10 ¶¶ 26-32.

[56]Order Regarding Motion to Dissolve Preliminary Injunction [Adv. Doc. Nos. 317, 336 and 337], Docket Entry No. 444 in Adversary No. 10-03150, and Docket Entry No. 2-148 in Civil Action No. 4:13-cv-3041.

[57]See Docket Sheet for Adversary 10-03150, Docket Entry No. 2-6 in Civil Action No. 4:13-cv-3041, entries on the referenced dates.

[58]Docket Entry No. 312 in Adversary No. 10-03150, and Docket Entry No. 4-135 in Civil Action No. 4:11-cv-1524.

the Bankruptcy Court entered a 187-page Memorandum Opinion Regarding the third motion for contempt and corresponding Third Contempt Order finding Goldman and Craig to be in contempt of court and awarding sanctions in the form of attorneys' fees and costs against them.[59] Goldman and Craig have appealed the August 7, 2013, Memorandum Opinion Regarding Third Motion for Contempt and corresponding Third Contempt Order.

On August 15, 2013, the Bankruptcy Court held a hearing on the reasonableness of the fees and expenses incurred by the SkyPort Parties in connection with the third contempt motion,[60] and on September 13, 2013, the Bankruptcy Court issued its Fee Findings and corresponding Fee Order granting $105,335.00 in attorney's fees and $32,178 in expenses for a total amount of $137,513.18.[61] Goldman and Craig have appealed the August 15, 2013, Fee Findings and Fee Order.

---

[59]See Docket Entry Nos. 690 and 691 in Adversary No. 10-03150, and Docket Entry Nos. 2-245 and 20246 in Civil Action No. 4:13-cv-3041, pp. 179-86.

[60]See Docket Sheet for Adversary No. 10-03150, Docket Entry No. 2-6 in Civil Action No. 4:13-cv-3041, entries on the referenced date.

[61]See Findings of Fact and Conclusions of Law Regarding the Amount of Fees and Expenses Awarded to the SkyPort Parties [Adv. Doc. No. 691], Docket Entry No. 704 in Adversary No. 10-03150, and Docket Entry No. 2-252 in Civil Action No. 4:13-cv-3041; and Order Regarding the Amount of Fees and Expenses Awarded to the SkyPort Parties [Adv. Doc. No. 691], Docket Entry No. 705 in Adversary No. 10-03150, and Docket Entry No. 2-253 in Civil Action No. 4:13-cv-3041.

## II.  **Standard of Review**

A district court has jurisdiction to hear an appeal from a bankruptcy court's final judgment or order.  See 28 U.S.C. § 158(a).  District courts review a bankruptcy court's findings of fact for clear error, and its legal conclusions de novo.  See In re Bradley, 588 F.3d 254, 261 (5th Cir. 2009).  A bankruptcy court's decision to impose sanctions for contempt is discretionary; therefore, the exercise of that power is reviewed for abuse of discretion.  See Matter of Terrebonne Fuel and Lube, Inc., 108 F.3d 609, 613 (5th Cir. 1997).  See also In re Bradley, 588 F.3d at 261 ("A bankruptcy court's assessment of monetary sanctions for contempt is reviewed for abuse of discretion.").  A bankruptcy court abuses its discretion when it "(1) applies an improper legal standard or follows improper procedures . . ., or (2) rests its decision on findings of fact that are clearly erroneous."  Cahill v. Walker & Patterson, P.C. (In re Cahill), 428 F.3d 536, 539 (5th Cir. 2005).  The "clearly erroneous" standard allows this court to reverse the Bankruptcy Court's findings of fact "only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed."  In re Dennis, 330 F.3d 696, 701 (5th Cir. 2003).  "Mixed questions of fact and law, and questions concerning the application of law to the facts, are reviewed de novo."  In re Bass, 171 F.3d 1016, 1021 (5th Cir. 1999).  "Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court."

Whitehead v. Food Max of Mississippi, Inc., 332 F.3d 796, 803 (5th Cir.) (en banc) cert. denied sub nom. Minor v. K-Mart Corp., 124 S. Ct. 807 (2003).

### III.  Appeal of Orders Regarding Dismissal of Wilson Vukelich

The Schermerhorn Parties appeal three orders regarding the dismissal of Wilson Vukelich:   (1) Order Denying in Part and Continuing in Part Defendant Wilson Vukelich L.L.P.'s Motion to Dismiss [Adv. Docket No. 69], filed January 13, 2011, Docket Entry No. 273;[62] (2) Order filed March 31, 2011, Docket Entry No. 297, denying the Schermerhorn Parties' Motion for Extension, granting the Wilson Vukelich Motion to Dismiss upon finding that the plaintiffs failed to properly serve Wilson Vukelich with process;[63] and (3) Order filed March 31, 2011, Docket Entry No. 298, denying "[t]he Motion of the Schermerhorn Parties for Entry of Order . . . except that the dismissal shall be 'without prejudice.'"[64]   The Schermerhorn Parties argue that the Bankruptcy Court entered these orders in error because it failed to give them at least 120 days from the date of its January 13, 2011, order to serve Wilson Vukelich, and it erroneously concluded that service on Wilson

---

[62]Docket Entry No. 273 in Adversary No. 10-03150, and Docket Entry No. 4-124 in Civil Action No. 4:11-cv-1524.

[63]Docket Entry No. 297 in Adversary No. 10-03150, and Docket Entry No. 4-131 in Civil Action No. 4:11-cv-1524.

[64]Docket Entry No. 298 in Adversary No. 10-03150, and Docket Entry No. 4-132 in Civil Action No. 4:11-cv-1524.

Vukelich's receptionist did not constitute proper service in compliance with the Hague Convention.[65]

## A.    Additional Factual and Procedural Background

On February 11, 2011, the Schermerhorn Parties filed a Motion for Extension.[66]  The Bankruptcy Court conducted a hearing on the Motion for Extension on February 23, 2011, and continued it to March 1, 2011.[67]  At the February 23, 2011, hearing the Bankruptcy Court warned the Schermerhorn Parties' counsel that if service had not been completed by the March 1st hearing, "then I'm going to need to hear testimony on the motion and then, obviously, I'll make a ruling on it."[68]  At the March 1, 2011, hearing the Schermerhorn Parties' counsel informed the Court that Wilson Vukelich had been served the day before, but that the return of service had not yet been received or filed.[69]  Counsel for Wilson Vukelich acknowledged that "Wilson Vukelich was served in Canada with a pleading and a

---

[65]Brief of Appellants - The Schermerhorn Parties, Docket Entry No. 16 in Civil Action No. 4:11-cv-1524, pp. 55-65.

[66]Docket Entry No. 280 in Adversary No. 10-03150, and Docket Entry No. 4-126 in Civil Action No. 4:11-cv-1524.

[67]Transcript of Hearing Held February 23, 2011, Docket Entry No. 346 in Adversary No. 10-03150, and Docket Entry No. 4-364 in Civil Action No. 4:11-cv-1524, pp. 5:8-10, 7:6-7.

[68]Id. at 6:3-5.

[69]Transcript of Hearing Held on March 1, 2011, Docket Entry No. 347 in Adversary No. 10-03150, and Docket Entry No. 4-365 in Civil Action No. 4:11-cv-1524, p. 3:12-18.

summons."[70]    But because Wilson Vukelich's counsel refused to stipulate that service had been completed in compliance with either the Hague Convention or the court's orders, the Bankruptcy Court continued the hearing on the motion to dismiss to March 8, 2011.[71]

On March 7, 2011, counsel for the Schermerhorn Parties filed a Return of Service executed upon Wilson Vukelich on February 28, 2011.[72]

At the March 8, 2011, hearing Wilson Vukelich argued that service had not been effected in compliance with the Hague Convention because service had not been completed in compliance with local law. As evidence that service had not been completed in compliance with local law, Wilson Vukelich argued to the Bankruptcy Court that: (1) the Certificate attached to the Return of Service stated that service was accomplished on Marilyn Heish, a receptionist at Wilson Vukelich LLP; (2) Article 5 of the Hague

---

[70]Id. at 4:1-3 ("I'm simply confirming for you today that Wilson Vukelich was served in Canada with a pleading and a summons."). See also id. at 3:20-21 ("I certainly agree that Wilson Vukelich was served with a copy of the petition yesterday.").

[71]Id. at 4:4-8 ("We've got a court order that wasn't complied with and we have asked you to dismiss on the basis of ineffective service. You said you were going to do it if service wasn't effected by February 18th. That wasn't done."); 5:1-11 (counsel for Wilson Vukelich telling the Bankruptcy Court that he could not stipulate that service was properly effected in compliance with the Hague Convention); 8:17-18 ("[W]e'll continue today's hearing for one week until March 8th, 2011.").

[72]Return of Service, Docket Entry No. 286 in Adversary No. 10-03150, and Docket Entry No. 4-300 in Civil Action No. 4:11-cv-1524.

Convention provided that the Central Authority of the signatory at issue, here Canada, shall arrange to have the petition and summons served by an appropriate agent by the method prescribed by its internal laws for service of documents in domestic actions; (3) Rule 16.01 of the Rules of Civil Procedure and the law governing service within the Province of Ontario provided that process shall be served personally as provided in Rule 16.02; (4) Rule 16.02(m) provided that service shall be made on a partnership by leaving a copy of the document with any one or more of the partners or with a person at the principal place of business of the partnership who appears to be in control or management of the place of business.

Citing Molson v. Vitale, et al., 47 C.P.C. (2d) 302 (B.C.S.C.) (1991), Wilson Vukelich argued that the service made on Wilson Vukelich was ineffective because it had been made on a receptionist, not on a partner or person who appeared to be in control or management of the partnership's principal place of business.[73]   In Molson a default judgment was set aside for ineffective service because a writ of summons was served on a secretary, instead of an officer or person with authority over the business affairs of the company as required by British Columbia Rule of Court 11(2)(b).   Wilson Vukelich argued that the only

---

[73]Transcript of March 8, 2011, Hearing, Docket Entry No. 289 in Adversary No. 10-03150, and Docket Entry No. 4-128 in Civil Action No. 4:11-cv-1524, pp. 6:2-10:25.

possible explanation for why service had not been correctly performed in accordance with Canadian law was that counsel for the Schermerhorn Parties "just didn't look to see how it ought to be done, [and] . . . depended on someone else to do it."[74]

The Schermerhorn Parties did not dispute that service had been made on a receptionist, or that local law required service to be made on a partner or person who appeared to be in control or management of the partnership's principal place of business. Instead, citing the Certificate received from Canada's Central Authority as evidence that service had been made in compliance with the Hague Convention and local law, the Schermerhorn Parties questioned the ability of Wilson Vukelich's counsel to "say what appearances were,"[75] and argued that they "should be apprised of this fact and given an opportunity to present evidence that rebuts what he's now saying in rebutting the certificate of service that was made."[76]

After admonishing the Schermerhorn Parties that they had been warned that the March 8th hearing would be an evidentiary hearing but that they had failed to present witnesses,[77] and that they would

---

[74]Id. at 11:8-10.

[75]Id. at 12:22.

[76]Id. at 12:24-13:2.

[77]Id. at 13:3-20 ("Mr. Smith, how much -- how much opportunity do I need to give your clients to provide evidence?" I spent a ton
(continued...)

not be accorded an additional hearing to put on evidence,[78] the Bankruptcy Court made the following findings and conclusions and directed Wilson Vukelich's counsel to draft an order memorializing them:

> Mr. Jones, go ahead and do an order that says, first of all, that I granted the motion for extension beyond March 1 because my order of January 13th says they've got until March 1. . .
>
> . . .
>
> I make a finding that Ms. Marilyn Heish was served.  I make a finding that she is a receptionist at Wilson Vukelich, that's based upon Exhibit #1 [Return of Service].
>
> I make a legal conclusion that 16.02 of the Ontario Civil Practice is the governing statute for serving, together with the -- this reference to Article 5 of the Hague Convention.

---

[77] (...continued) of time working on the claims 'cause no one could reach agreement as to whether they were derivative or direct.  I issued an order on January 13 saying, come to court on March 1, and then I get this motion for continuance.  And so I hold hearing last week and you told me what you told me, and I said, all right, we'll come back this week.  I don't see any witnesses here in the courtroom.  How much time -- I mean how much opportunity -- I mean, you know, Mr. Goldman came down here.  If he was responsible for this, he ought to be taking the stand.  If it's the secretary who took the service, she ought to be taking the stand.  But I've got nothing in evidence right now about some partner standing behind a secretary.  What it says here is Ms. Marilyn Heish, receptionist at Wilson Vukelich, received service."); 18:6-8 (I mean it just really ticks me off that your clients and that Mr. Goldman and anybody else involved isn't down here giving me some testimony.").

[78] Id. at 18:21-25 ("And I don't want any motions for reconsideration on the grounds that you now want to put on evidence.  Let me put it this way, you can do what you want but I'm not going to give you a hearing.  I'm going to deny it.").

-32-

And I make a legal conclusion that Wilson Vukelich is a partnership and that -- a legal conclusion that to properly serve a partnership in the great Province of Ontario, Canada, you've got to serve a copy of the document on one or more of the partners or on a person at the principal place of business of the partnership who appears to be in control or management of the place of business.

I make a legal conclusion that a receptionist at the Wilson Vukelich law firm is not a partner.

I make a legal conclusion that the receptionist at Wilson Vukelich is not a person who appears to be in control or management of the place of business.

. . .

And that means . . . that the motion to dismiss is granted on solely the service of process grounds.[79]

On March 16, 2011, the Schermerhorn Parties filed their Motion of the Schermerhorn Parties for Entry of Order [Relates to Doc. No. 273 and 292], in which they argued that the Bankruptcy Court should not sign the proposed order submitted by Wilson Vukelich's counsel, but should, instead, sign a counter-order that they proposed because the order proposed by Wilson Vukelich, <u>inter alia</u>, incorrectly failed to state that the dismissal was without prejudice.[80]

On March 31, 2011, the Bankruptcy Court entered two orders relating to Wilson Vukelich's motion to dismiss. The first Order, Docket Entry 297, denied the Schermerhorn Parties' Motion for

---

[79] <u>Id.</u> at 19:2-20:13.

[80] Docket Entry No. 293 in Adversary No. 10-03150, and Docket Entry No. 4-129 in Civil Action No. 4:11-cv-1534.

Extension beyond March 1, 2011, and granted the Wilson Vukelich Motion to Dismiss, expressly finding that the Schermerhorn Parties had failed to properly serve Wilson Vukelich with process.[81]   The second Order, Docket Entry No. 298, disposed of the Schermerhorn Parties' Motion for Entry of Order [Docket Entry No. 293], stating that "[t]he Motion of the Schermerhorn Parties for Entry of Order is DENIED except that the dismissal shall be 'without prejudice.'"[82] The Schermerhorn Parties appeal both of these orders.

**B.    Order Entered January 13, 2011, Denying in Part and Continuing in Part Wilson Vukelich's Motion to Dismiss**

On January 13, 2011, the Bankruptcy Court issued an Order Denying in Part and Continuing in Part Defendant Wilson Vukelich's Motion to Dismiss[83] in which it ordered the Schermerhorn Parties to

---

[81]Docket Entry No. 297 in Adversary No. 10-03150, and Docket Entry No. 4-131 in Civil Action No. 4:11-cv-1524, p. 3.   This Order also provided that

> [t]he Court's Order Regarding Motion to Dismiss Adversary Proceeding Filed by all Defendants Except Wilson Vukelich LLP entered January 13, 2011 [Adv. Docket No. 274] is modified to provide that all claims set forth in Column 1 of the Table of Claims that were to be remanded to state court now excludes all claims asserted against Wilson Vukelich LLP, which claims are DISMISSED without prejudice.

Id.

[82]Docket Entry No. 298 in Adversary No. 10-03150, and Docket Entry No. 4-132 in Civil Action No. 4:11-cv-1524.

[83]Docket Entry No. 273 in Adversary No. 10-03150, and Docket Entry No. 4-124 in Civil Action No. 4:11-cv-1524.

properly serve Wilson Vukelich by February 18, 2011, and set a continued hearing on this portion of the motion for March 1, 2011.[84]

Citing <u>Nuovo Pignone, SpA v. STORMAN ASIA M/V</u>, 310 F.3d 374, 384-85 (5th Cir. 2002), the Schermerhorn Parties argue that the Bankruptcy Court erred in its January 13, 2011, order by giving them only 30 days to serve Wilson Vukelich.   The Schermerhorn Parties argue that in <u>Nouvo Pignone</u> on "facts similar to ours, the Fifth Circuit held that where plaintiffs were found to have improperly served a foreign defendant by mail, they must be permitted a 'reasonable time' to effect service from when the determination of improper service was made."[85]   Asserting that the 120-day time limit for effecting service set forth in Federal Rule of Civil Procedure 4(m) does not apply to service on a foreign entity such as Wilson Vukelich pursuant to the Hague Convention, the Schermerhorn Parties argue that the Bankruptcy Court should have given them at least 120 days to serve Wilson Vukelich.[86]

Missing from the Schermerhorn Parties' brief is a cite to any evidence or legal argument showing that the Bankruptcy Court did not afford them a reasonable time to effect service on Wilson Vukelich.   When, after seeking expedited service via Canada's Central Authority for service in compliance with the Hague

---

[84]<u>Id.</u> at 14.

[85]Brief of the Schermerhorn Parties, Docket Entry No. 16 in Civil Action No. 4:11-cv-1524, p. 61.

[86]<u>Id.</u> at 62.

Convention, the Schermerhorn Parties received notice that service could not be accomplished within the allotted time period, they sought and received both an extension of time to complete service from February 18 to March 1, 2011, and a continuance of the hearing on Wilson Vukelich's motion to dismiss from March 1 to March 8, 2011.[87]  The continuance provided the Schermerhorn Parties time to receive and file a return of service from Canada's Central Authority.[88]

The Fifth Circuit requires courts to provide parties a "reasonable time" to effect service.  See Nuovo Pignone, 310 F.3d at 385.  See also Lozano, 693 F.3d at 488-89 (rejecting holding in Lucas v. Natoli, 936 F.2d 432 (9th Cir. 1991) (per curiam) that time for effecting service on foreign defendants is without limit).  The Schermerhorn Parties have failed to cite evidence that the time the Bankruptcy Court provided them to effect service on Wilson Vukelich was not reasonable.  Instead, the record shows that the Bankruptcy Court not only extended the time to complete service from the date provided in its January 13, 2011, order (February 18, 2011) to March 1, 2011, based on the Schermerhorn Parties' representations that service could be -- and, in fact, was --

_____

[87]See Transcript of Hearing Held February 23, 2011, and Transcript of Hearing Held March 1, 2011, Docket Entry Nos. 346 and 347 in Adversary No. 10-03150, and Docket Entry Nos. 4-364 and 4-365 in Civil Action No. 4:11-cv-1524.

[88]Return of Service, Docket Entry No. 286 in Adversary No. 10-03150, and Docket Entry No. 4-300 in Civil Action No. 4:11-cv-1524.

completed by then, and continued to March 8, 2011, the hearing on Wilson Vukelich's motion to dismiss to allow them time to receive and file the return of service.[89]  Moreover, since, the Schermerhorn Parties filed a return of service within the allotted time, argued to the Bankruptcy Court and now argue to this court that service was effective, and failed to ask the Bankruptcy Court for additional time to serve Wilson Vukelich again, the Schermerhorn Parties have failed to cite evidence showing that the period of time the Bankruptcy Court provided them to serve Wilson Vukelich was not "reasonable time."  Accordingly, the Bankruptcy Court's January 13, 2011, Order Denying in Part and Continuing in Part Defendant Wilson Vukelich's Motion to Dismiss, Docket Entry No. 273, in Adversary No. 10-03150, will be affirmed.

## C.   Orders Entered on March 31, 2011, Granting Wilson Vukelich's Motion to Dismiss and Denying in Part the Schermerhorn Parties' Motion for Entry of Order

On March 31, 2011, the Bankruptcy Court entered two orders relating to Wilson Vukelich's motion to dismiss.  The first Order, Docket Entry No. 297, denied the Schermerhorn Parties' Motion for Extension beyond March 1, 2011, and granted Wilson Vukelich's Motion to Dismiss for failure to properly serve Wilson Vukelich.[90]

---

[89]See Brief of Appellants, Docket Entry No. 16 in Civil Action No. 4:11-cv-1524, p. 64 n.15 (acknowledging that "plaintiffs were given 40 days initially and another 14 days of extensions to effect service after the court's January 13, 2011 decision").

[90]Docket Entry No. 297 in Adversary No. 10-03150, and Docket Entry No. 4-131 in Civil Action No. 4:11-cv-1524, p. 3.  This Order also provided that

(continued...)

The second Order, Docket Entry No. 298, stated that "[t]he Motion of the Schermerhorn Parties for Entry of Order is DENIED except that the dismissal shall be 'without prejudice.'"[91]

Citing <u>More & More AG v. P.Y.A. Importer Ltd.</u>, 2010 ONCA 771 (Court of Appeal for Ontario 2010), the Schermerhorn Parties argue that the Bankruptcy Court erred in its order of dismissal by finding that Wilson Vukelich had not been properly served in compliance with the Hague Convention because "[t]here is ample authority under Ontario law that service on a receptionist is good service."[92]   The Schermerhorn Parties also argue that even if service upon a receptionist was improper under Ontario Rule 16.03(m), the service made on Wilson Vukelich was, nonetheless, effective under the savings clause contained in Ontario Rule 16.08, which provides:  "Where a document has been

---

[90] (...continued)
The Court's Order Regarding Motion to Dismiss Adversary Proceeding Filed by all Defendants Except Wilson Vukelich LLP entered January 13, 2011 [Adv. Docket No. 274] is modified to provide that all claims set forth in Column 1 of the Table of Claims that were to be remanded to state court now excludes all claims asserted against Wilson Vukelich LLP, which claims are DISMISSED without prejudice.

<u>Id.</u>

[91]Docket Entry No. 298 in Adversary No. 10-03150, and Docket Entry No. 4-132 in Civil Action No. 4:11-cv-1524.

[92]Brief of Appellants, Docket Entry No. 16 in Civil Action No. 4:11-cv-1524, p. 62.   <u>See also</u> Reply/Response Brief of Appellants of the Schermerhorn Parties, Docket Entry No. 36 in Civil Action No. 4:11-cv-1524, pp. 20-21.

served in a manner other than one authorized by these rules . . ., the court may make an order validating the service where the court is satisfied that, (a) the document came to the notice of the person to be served."  Ontario Rule 16.08.[93]  Finally, citing Jim Fox Enterprises v. Air France, 664 F.2d 63 (5th Cir. 1981), the Schermerhorn Parties argue that  "dismissal is never proper when there is any possibility that service can be completed and when there is a risk of a statute of limitations running."[94]

The problem with the arguments that the Schermerhorn Parties make with respect to the Wilson Vukelich dismissal is that these arguments are being made for the first time on appeal.  Under "this Circuit's general rule, arguments not raised before the [lower] court are waived and will not be considered on appeal unless the party can demonstrate 'extraordinary circumstances.'"  AG Acceptance Corp. v. Veigal, 564 F.3d 695, 700 (5th Cir. 2009).  See also Singleton v. Wulff, 96 S. Ct. 2868 (1976) ("[T]he general rule . . . that a federal appellate court does not consider an issue not passed upon below . . . is 'essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues and in order that litigants may not be

---

[93]Brief of Appellants, Docket Entry No. 16 in Civil Action No. 4:11-cv-1524, p. 62; Reply/Response Brief of Appellants of the Schermerhorn Parties, Docket Entry No. 36 in Civil Action No. 4:11-cv-1524, p. 21.

[94]Brief of Appellants, Docket Entry No. 16 in Civil Action No. 4:11-cv-1524, p. 64.

surprised on appeal by final decision there of issues upon which they have no opportunity to introduce evidence.'" (citation and alterations omitted) (quoting Hormel v. Helvering, 61 S. Ct. 719 [556] (1941)). "Extraordinary circumstances" exist only if the appellant establishes "the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it." N. Alamo Water Supply Corp. v. City of San Juan, 90 F.3d 910, 916 (1996).

The court's extensive review of the record reveals that the Schermerhorn Parties never argued to the Bankruptcy Court that service on a receptionist could satisfy Ontario Rule 16.03(m) pursuant to the holding in More & More, that service on Wilson Vukelich could be upheld pursuant to the savings clause contained in Ontario Rule 16.08, or that Wilson Vukelich should not be dismissed due to risk of a statute of limitations running. Nor do they argue that extraordinary circumstances exist in this case. Instead, the Schermerhorn Parties argued to the Bankruptcy Court that Wilson Vukelich should not be dismissed because the Certificate received from the Canadian Central Authority stated that service had been made in conformity with Article 5 of the Hague Convention, and that any dismissal should be without prejudice. The Bankruptcy Court accepted that argument, and the two orders entered on March 31, 2011, stated that the Wilson Vukelich dismissal was without prejudice. The Bankruptcy Court rejected the Schermerhorn Parties' argument that the Certificate

-40-

from the Canadian Central Authority was sufficient to prove that service had been made in compliance with the Hague Convention and local law.

Some courts have held that the return of a completed certificate of service from a state's Central Authority is prima facie evidence that the service was made in compliance with the Hague Convention procedures and with that state's internal laws. See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1389-90 (8th Cir. 1995) ("By not objecting to the documents and by certifying service the Central Authority indicated that the documents complied with the Convention and that it had served them in compliance with the Convention, i.e., that it had made service as [the State's] law required."). See also United National Retirement Fund v. Ariela, Inc., 643 F. Supp. 2d 328, 335 (S.D.N.Y. 2008); Myrtle v. Graham, Civil Action No. 10-1677, 2011 WL 446397, at *2 (E.D. La. February 4, 2011). "These courts 'decline[d] to look behind the certificate of service to adjudicate the issues of [internal] procedural law' and found that the defendants had been properly served pursuant to the Hague Convention." Myrtle, 2011 WL 446397, at *2 (quoting United National Retirement Fund, 643 F. Supp. 2d at 335).

Although the Hague Convention sets forth the procedure that a litigant must follow to perfect service abroad, it fails to prescribe a procedure for the forum court to follow should an element of that procedure fail. See Burda Media, Inc. v. Viertel,

-41-

417 F.3d 292, 301 (2d Cir. 2005).   Moreover, the Schermerhorn Parties failed to cite the Bankruptcy Court to any authority supporting their argument that the Certificate from the Canadian Central Authority was sufficient to prove that service had been made in compliance with the Hague Convention and local Canadian law. This court will therefore not disturb the Bankruptcy Court's orders. See Pluet v. Frasier, 355 F.3d 381, 384-85 (5th Cir. 2004).

Because the Schermerhorn Parties have failed to establish that the Bankruptcy Court erred by finding that Wilson Vukelich had not been properly served in compliance with the Hague Convention, and because the Schermerhorn Parties never argued to the Bankruptcy Court that Wilson Vukelich should not be dismissed either because there was a risk of the statute of limitations running or because there was a possibility that service in compliance with the Hague Convention could still be completed, this court concludes that the Schermerhorn Parties have failed to establish that the Bankruptcy Court's March 31, 2011, Orders dismissing Wilson Vukelich and denying in part their motion for entry of a substitute order contain reversible error.   Accordingly, these two orders, Docket Entry Nos. 297 and 298 in Adversary No. 10-03150, will be affirmed.

## IV.  **Appeal of Orders for Sanctions and Contempt**

The Bankruptcy Court issued twelve orders for sanctions, contempt, and payment of attorneys' fees and costs incurred achieving these orders against the Schermerhorn Parties, two of

-42-

their attorneys -- Goldman and Fryar -- and Craig -- an individual acting in concert with Goldman -- that are being appealed; several of these orders are also being cross-appealed by the SkyPort Parties.

## A.   Applicable Law

Section 105(a) provides bankruptcy courts broad authority to "take any action that is necessary or appropriate 'to prevent an abuse of process.'" Marrama v. Citizens Bank of Massachusetts, 127 S. Ct. 1105, 1112 (2007).   In relevant part, 11 U.S.C. § 105 states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).   Courts have held that § 105 is broad enough to empower bankruptcy courts to sanction attorneys in conjunction with their inherent power "to implement the Bankruptcy Code and prevent abuses of bankruptcy process, powers inherent to district courts, as the Supreme Court recognized in Chambers v. NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991)." In re Osborne, 375 B.R. 216, 226 (Bankr. M.D. La. 2007).   The Fifth Circuit has held that § 105 should be "interpret[ed] . . . liberally." Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 760 (5th Cir. 1995).

In <u>Chambers</u> the Supreme Court upheld the imposition of sanctions in the form of attorneys' fees and associated costs pursuant to the court's inherent powers against a litigant who had repeatedly engaged in bad-faith conduct.  The Court held that when sanctions under applicable rules and statutes are inadequate, a court may call upon its inherent powers to assess attorneys' fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  111 S. Ct. at 2133.  The Court stated that

> [i]n this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party . . . as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order."

<u>Id.</u> (citations omitted).  The Court explained that

> the bad-faith exception resembles the third prong of Rule 11's certification requirement, which mandates that a signer of a paper filed with the court warrant that the paper "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

<u>Id.</u>

In <u>Matter of Case</u>, 937 F.2d 1014, 1023 (5th Cir. 1991), the Fifth Circuit held that the principles recognized by the Supreme Court in <u>Chambers</u> are "equally applicable to the bankruptcy court." The Fifth Circuit has since explained that "[t]he threshold for the use of inherent power sanctions is high," <u>Crowe v. Smith</u>, 151 F.3d 217, 226 (5th Cir. 1998), <u>cert. denied</u>, 119 S. Ct. 2047 (1999) (<u>Crowe I</u>); and that a court's inherent power to sanction "must be

exercised with restraint and discretion," id.; must be accompanied by "a specific finding that the . . . [sanctioned party] acted in 'bad faith,'" id. at 236 (citing Chaves v. M/V Medina Star, 47 F.3d 153, 156 (5th Cir. 1995)); and "must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." Gonzalez v. Trinity Marine Group, Inc., 117 F.3d 894, 898 (5th Cir. 1997) (quoting Chambers, 111 S. Ct. at 2136). See also Marrama, 127 S. Ct. at 1116-1117 (Alito, J., dissenting) ("[b]ankruptcy courts have used their statutory and equitable authority to craft various remedies for a range of bad faith conduct: [including] . . . penalizing counsel; assessing costs and fees; or holding the debtor in contempt"). A determination of bad faith is a finding of fact that can be reversed "only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." In re Dennis, 330 F.3d 696, 701 (5th Cir. 2003). This court must give "due regard . . . to the opportunity of the [bankruptcy] court to judge the credibility of the witnesses." Fed. R. Civ. P. 52(a). See also Bankr. R. 8013.

**B.   Sanction Orders**

Asserting that the State Court Petition was not a collateral attack on the Confirmation Order and Plan,[95] the Schermerhorn

---

[95]Id. at 42-48.

Parties argue that the Bankruptcy Court erred by entering each of the following five orders for sanctions:   (1) Order Regarding Reasonableness of Hoover Slovacek Fees, Docket Entry No. 158, filed August 11, 2010; (2) Order Directing Payment to Hoover Slovacek, Docket Entry No. 233, filed October 29, 2010; (3) McKool Smith Memorandum Opinion, Docket Entry No. 299, filed on March 31, 2011; and (4) McKool Smith Order, Docket Entry No. 300, filed March 31, 2011; and (5) Order for Additional Sanctions, Docket Entry No. 242, filed November 9, 2010.[96]  The Schermerhorn Parties argue that these five orders for sanctions were issued in error because the Bankruptcy Court:   (1) failed to identify a legal basis for the sanctions; (2) failed to find that the Schermerhorn Parties had engaged in bad faith; (3) failed to conduct a hearing on the reasonableness of the sanctions, and imposed sanctions that were excessive and not the least severe necessary to achieve their purpose.[97]

      1.    <u>The Bankruptcy Court Did Not Err by Failing to Identify a Legal Basis for the Sanctions</u>

The Schermerhorn Parties' argument that the Bankruptcy Court erred by failing to identify the legal basis for its sanction orders has no merit.   In their motion to dismiss all of the

---

[96]Notice of Appeal to the United States District Court, Docket Entry No. 1 in Civil Action No. 4:11-cv-1524.

[97]<u>See</u>, <u>e.g.</u>, Brief of Appellants - The Schermerhorn Parties, Docket Entry No. 16 in Civil Action No. 4:11-cv-1524, pp. 33-38.

defendants in the state court action except Wilson Vukelich the
SkyPort Parties sought sanctions in the form of reasonable
attorneys' fees and costs based on the court's "inherent power to
enforce its own orders."[98]  Moreover, in their original complaint
and application for preliminary and permanent injunction, the
SkyPort Parties cited 11 U.S.C. § 105 in support of their prayer
for relief which included damages in the form of reasonable
attorneys' fees and costs incurred prosecuting that action, i.e.,
Adversary No. 10-03225.[99]  Although neither the Order Regarding
Reasonableness of Hoover Slovacek Fees nor the Order Directing
Payment to Hoover Slovacek expressly states the legal basis for
awarding sanctions, the Bankruptcy Court's McKool Smith Memorandum
Opinion expressly cites both the defendants' request for sanctions
in their motion to dismiss and Chambers, 111 S. Ct. at 2123, in
support of the statement that, "[t]his Court has the inherent
authority to impose sanctions in order to regulate the practice of
attorneys and litigants appearing before it."[100]  Moreover, since

---

[98]Motion to Dismiss, or Alternatively, for Summary Judgment,
and for Sanctions, Docket Entry No. 2 in Adversary No. 10-03150,
and Docket Entry No. 4-15 in Civil Action No. 4:11-cv-1524, pp. 41-
43 ¶¶ 121-28.

[99]Plaintiffs' Original Complaint and Application for
Preliminary Injunction and Permanent Injunction, Docket Entry No. 1
in Adversary No. 10-03225, and Docket Entry No. 4-317 in Civil
Action No. 4:11-cv-1524.

[100]McKool Smith Memorandum Opinion, Docket Entry No. 299 in
Adversary No. 10-03150, and Docket Entry No. 4-134 in Civil Action
No. 4:11-cv-1524, p. 11.

the McKool Smith Memorandum Opinion continues by stating that "[c]onsistent with this authority, the Court orally granted the Original Motion for Sanctions on May 27, 2010,"[101] this court concludes that the Bankruptcy Court did not err by failing to identify the legal bases for its orders sanctioning the Schermerhorn Parties for filing the State Court Petition by directing them to pay the reasonable attorneys' fees and costs incurred by all of the defendants except Wilson Vukelich. The four orders for sanctions arising from the findings and conclusions made at the May 27, 2010, hearing are clearly based on the Bankruptcy Court's inherent authority to regulate the practice of attorneys and litigants appearing before it.

2.   The Bankruptcy Court Did Not Err by Failing to Find that the Schermerhorn Parties Engaged in Bad Faith

The Schermerhorn Parties argue that the Bankruptcy Court erred by sanctioning them pursuant to its inherent authority without finding that they had engaged in bad faith. The Schermerhorn Parties also argue that the record evidence does not justify a finding of bad faith because: (1) the Schermerhorn Parties lacked sufficient evidence of fraud to challenge SkyPort's Plan during the Chapter 11 proceeding; (2) the Bankruptcy Court erroneously concluded that the State Court Petition was a collateral attack on the Confirmation Order and Plan entered in SkyPort's Chapter 11

---

[101]Id. at 12.

-48-

case; (3) the State Court Petition asserted many direct claims that were not barred by the injunctive provisions of the confirmed plan; and (4) the State Court Petition did not name SkyPort, the Reorganized Debtor, as a party defendant.[102]   The Schermerhorn Parties' argument that the Bankruptcy Court erred by sanctioning them pursuant to its inherent powers without finding that they had engaged in bad faith or by erroneously finding that they engaged in bad faith has no merit.

In their motion to dismiss all of the defendants in the state court action except Wilson Vukelich argued that sanctions were appropriate "because Plaintiffs [we]re acting in bad faith."[103] Although neither the Order Regarding Reasonableness of Hoover Slovacek Fees nor the Order Directing Payment to Hoover Slovacek, expressly states that the Schermerhorn Parties had acted in bad faith, the McKool Smith Memorandum Opinion states

> [t]he Court orally granted the Original Motion for Sanctions [at the hearing held] on May 27, 2010.  The Court concluded that the Plaintiffs acted in bad faith by filing the Original Petition in direct contravention of the Plan and the Confirmation Order.  [Findings of Fact Nos. 6, 8, & 11].[104]

---

[102]Brief of Appellants - The Schermerhorn Parties, Docket Entry No. 16 in Civil Action No. 4:11-cv-1524, pp. 35-37.

[103]Motion to Dismiss, or, Alternatively, for Summary Judgment, and for Sanctions, Docket Entry No. 2 in Adversary No. 10-03150, and Docket Entry No. 4-15 in Civil Action No. 4:11-cv-1524, p. 41.

[104]McKool Smith Memorandum Opinion, Docket Entry No. 299 in Adversary No. 10-03150, and Docket Entry No. 4-134 in Civil Action No. 4:11-cv-1524, p. 12 (citing findings of fact stated previously therein at 4, 5, and 6).

Moreover, this court's review of the record reveals that the Bankruptcy Court repeatedly stated that its decision to sanction the Schermerhorn Parties by ordering them to pay reasonable attorneys' fees and costs rested on its findings and conclusions that the State Court Petition was not only a direct violation of the injunctive provisions contained in -- and a collateral attack on -- the Confirmation Order and Plan entered in SkyPort's Chapter 11 case, but also an end-run around § 1144 of the Bankruptcy Code.[105]

At the conclusion of the May 27, 2010, hearing the Bankruptcy Court stated:

> My confirmation order which confirmed the plan expressly says that SkyComm and SkyPort will merge. So there is no longer any SkyComm. This pleading before me, filed in Harris County District Court was telegraphing to a State Court Judge . . . that part of the relief that Plaintiffs were seeking was to appoint a director, a Trustee, a managing agent, a fiscal agent, or other Court-appointed fiduciary. The Court-appointed [fiduciary] being appointed by the State Court for SkyComm and SkyPort.
>
> To tell a State Court judge and [possibly a state court] jury that SkyComm exists, which is what this pleading does, violates, goes against, contradicts, the plan that I approved in August of 2009.
>
> And to use the excuse that gee we didn't make SkyPort, the reorganized Debtor, a party Defendant in the State Court suit is very disingenuous. It's very distasteful to me. There's no question, based upon the testimony of Mr. McCary . . . [that] notice was given to the equity holders of SkyPort.

---

[105]Transcript of May 27, 2010, Hearing, Docket Entry No. 4:105 in Civil Action No. 4:11-cv-1524, p. 272:4-16.

They knew about this bankruptcy.  They ha[d] an opportunity to come in and object to the plan.  And Mr. McCrary's testimony is very interesting.  He said he had this two page document, which he worked up.

You know, one of the best devices for conducting discovery is in bankruptcy.  And it's called a 2004 examination.  And so, Mr. McCrary and the other equity holders, had the opportunity to take 2004 examinations from here to eternity of Mr. Kubbernus, and of anybody else whom they thought were committing skullduggery.  And they failed to do it.

What they did is, they waited, chose not to participate in the bankruptcy, and the[n] post-confirmation, hauled off and filed a suit saying to a State Court judge that he or she ought to appoint a Trustee, or managing agent, for an entity that no longer exists, SkyComm, because my plan extinguished SkyComm shares, that is, the plan that I confirmed.  And also telegraphing to a State Court judge that that judge should appoint a fiduciary or Trustee for SkyPort when I had confirmed a plan.

**And so to ask a State Court judge to appoint a Trustee to SkyPort for acts that occurred prior to the confirmation of the plan, is a direct[] violation of the plan and of the order confirming the plan.**

The allegations in this petition, which is now the live pleading before me, clearly set forth, I'm looking at pages 59, and 60, and 61, that,

> Mr. Kubbernus and Balaton made numerous false and misleading statements to the Bankruptcy Court, including Balaton and Kubbernus deliberately mixed and mingled the shareholders and creditors of SkyPort, which was a bankruptcy Debtor, with the shareholders and creditors of SkyComm, which was not.  Balaton and Kubbernus fraudulently represented that they owned the majority of the shares in SkyComm.  Balaton and Kubbernus misled the Court into assuming jurisdiction over, and affecting the rights of the shareholders and creditors of SkyComm, even though it was not a Debtor in bankruptcy.

-51-

Balaton and Kubbernus fraudulently claimed to be owed approximately 2 million by SkyPort when no such debt had been previously disclosed or shown on SkyComm's consolidated financial statements.

Balaton and Kubbernus listed LaVelle as a creditor of SkyComm for 515,000, even though their prior communications had indicated the debt ran from LaVelle and SkyComm.

We go on, and on, and on at page 60 and 61. All of these allegations are that Mr. Kubbernus, Balaton, Centurytel, duped me, tricked me, lied to me, in order to get me to confirm a plan, particularly and specifically the plan that I confirmed at a hearing on August 7, 2009, after listening to testimony, and after hearing, and after giving everyone an opportunity to participate, and vote.

So there is no question that the petition before me that was filed in Harris County at a minimum in paragraphs 321 through 334 go right to the plan confirmation process. And clearly say that among other things Mr. Kubbernus defrauded this Court, lied to this Court, made misrepresentations to this Court.

And Section 1144 of the Bankruptcy Code says,

"On request of a party-in-interest at any time before 180 days after the date of the entry of the order of confirmation and notice and hearing, the Court may revoke such order, if and only if, such order was procured by fraud."

The order was entered on the docket on August 12th, 2009. If you count 180 days forward, that gets you to February 8th, February 9th. And after that date, you can't revoke a confirmation order.

**And so the petition that was filed in [February, i.e., February 12, 2010] in Harris County is an end run around 11 U.S.C. § 1144 . . . at least insofar as it says to a State Court judge and any jury, hey, Mr. Kubbernus and these others lied to the Bankruptcy Court, obtained a confirmed plan by fraud.**

-52-

> **There is no way that these allegations are not an attack on the plan that I confirmed.  They are indeed a full frontal attack on the plan confirmation order that I signed.**[106]

The Bankruptcy Court stated, "to now go to the State Court more than six months later and say that Mr. Kubbernus duped me, is attacking the findings of fact and conclusions of law I made in order to confirm the plan back in August of 2009."[107]   The Bankruptcy also reiterated:

> Now, as I've also said, it's a violation of 1144, an attempt to do an end run around, 1144.  I also want to note, SkyPort is not a named party in this State Court lawsuit.  But there is no question that there is a concept called necessary parties, whether you're under state law or federal law.
>
> If you're going to seek relief against somebody like appointing a receiver, they're a necessary party.  And that's why I say this pleading is either disingenuous or deceptive.
>
> Because to go in to State Court and say give me a receiver for SkyPort, but not to put SkyPort in as a named party, I guess my response is give me a break.  Of course, SkyPort is a necessary party.  And to argue to a State Court that we ought to appoint a receiver to SkyPort, without naming SkyPort as a party, I think is a very disingenuous thing to do.  And anyone knows that SkyPort's a necessary party under the applicable rules, either federal or state when you're seeking that kind of relief.[108]

---

[106]Id. at 272:14-276:10 (emphasis added).

[107]Id. at 277:10-13.

[108]Id. at 284:13 - 285:4.

The Bankruptcy Court continued:

> I think this pleading is very disingenuous if not deceptive, [because] the allegations made to the State Court in this pleading are that all of these equity shareholders, these Plaintiffs, the allegations are that they are presently holding shares of SkyComm. That is a direct contradiction of the provision in the plan that I confirmed that says [those] shares [are] extinguished. . . . we've got a confirmed plan that extinguished the shares of SkyComm in August of 2009. That order was not appealed. It's a final order.
>
> . . .
>
> All these Plaintiffs could have participated in the process and they didn't. If they didn't want to lose their shares of SkyComm, they should have read the plan. They should have come in and complained. They didn't do it.
>
> And so what the factual allegations are in this complaint that they are presently holding shares of SkyComm, is dead, dead, contradictory of the plan provision that extinguished those shares . . .
>
> And as I said, that's why I find this pleading to be either deceptively, or at a minimum, disingenuously drafted.[109]

The Bankruptcy Court added:

> . . . To tell me that this pleading before me doesn't seek relief against SkyPort, doesn't seek to appoint a Trustee in SkyPort, is an incredible argument that has absolutely no merit.
>
> > "Wherefore, all the Plaintiffs pray that the Court enter an order, judgment, and decree granting the following relief against the Kubbernus Defendants, and order appointing a provisional director, Trustee, managing agent, fiscal agent, or other Court-appointed fiduciary for SkyComm and SkyPort."

---

[109]Id. at 286:1-25.

-54-

Pretty plain meaning there.   There's no ambiguity
there.  What these Plaintiffs were trying to do in State
Court was get that State Court judge or a jury to appoint
a provisional director, or Trustee, or managing agent of
SkyPort and SkyComm.  And that's a direct violation of
the very intent of my plan that I confirmed, which is
that SkyPort and SkyComm were merged.

**So what we've got here are Plaintiffs who have sat
on their hands, lay behind the log, and then made a
collateral attack that undermines the bankruptcy process,
undermines the integrity of the plan confirmation
process, and there is no question that --- that it
shouldn't have been done.**[110]

The Bankruptcy Court concluded:  "Should I remand this suit?

No way.  It has got allegations in it that should not be made, that

the Plaintiffs are barred from making, not the least of which is

that they are presently holding shares of SkyComm."[111]   The

Bankruptcy Court also concluded that "I'm going to grant the

injunction.   With respect to the Motion to Dismiss, or

Alternatively for Summary Judgment, the motion is granted.   The

complaint, the live pleading before me, is dismissed."[112]   The

Bankruptcy Court explained

I'm going to dismiss with prejudice the derivative causes
of action.   I'm going to dismiss without prejudice the
personal causes of action.   I'm certainly going to
dismiss without prejudice the personal causes of action.
I'm certainly going to dismiss without prejudice any
causes of action that were brought, pursuant to the carve
out.

---

[110]Id. at 287:17-288:13 (emphasis added).

[111]Id. at 290:19-22.

[112]Id. at 293:7-10.

But the derivative causes of action which were extinguished, need to be dismissed with prejudice. The question is, which ones are to be dismissed with prejudice. I'm not going to say tonight. I'm going to sit down and go through each and every one of them. And I'll issue a written ruling. So that if people want to appeal me, they can.[113]

On January 13, 2011, the Bankruptcy Court issued a written opinion distinguishing the derivative from the direct claims:

The Court has now completed its analysis of all of the claims brought by the Plaintiffs in the Petition. The Court therefore issues this Memorandum Opinion setting forth which claims in the Petition are barred and therefore must be dismissed with prejudice, and which claims are not barred and therefore may be prosecuted.[114]

The opinion reiterated the findings and conclusions made at the May 27, 2010, hearing:

13. On May 27, 2010, the Court held a hearing on the Motion to Dismiss and the Motion to Remand. At the end of this hearing, the Court concluded that it has jurisdiction over the removed claims because: (a) there are explicit allegations in the Petition which constitute an attack on the findings of fact and conclusions of law made by this Court in the Confirmation Order; and (b) the relief sought by the Plaintiffs, among other relief, seeks appointment of a receiver to take over the Reorganized Debtor (*i.e.*, the Reorganized SkyPort)—relief which is a direct attack on the Plan and the Confirmation Order. [May 27, 2010 Tr. 288:24-289:4]. . .

14. . . . on May 27, 2010 . . . The Court . . . concluded that some of the counts alleged in the Petition were derivative — *i.e.*, brought on behalf of the Debtor — and are therefore barred by the Confirmation Order, and

---

[113]*Id.* at 293:11-22.

[114]Memorandum Opinion Relating to Motion to Dismiss Adversary Proceeding Filed by All Defendants Except the Law Firm of Wilson Vukelich LLP entered on January 13, 2011, Docket Entry No. 272 in Adversary No. 10-03150, and Docket Entry No. 4-123 in Civil Action No. 4:11-cv-1524, p. 3.

may not be prosecuted by the Plaintiffs.  [May 27, 2010 Tr. 288:16-25]. . . The Court stated that after the parties conferred with each other, they should report back to the Court; and the Court would then dismiss with prejudice those claims which are derivative and dismiss without prejudice those claims which are direct.

15.  Additionally, at the same hearing, on May 27, 2010, this Court ruled that it would deny the Motion to Remand.[115]

The Court noted that

[i]n general, those claims that are derivative are barred, and those claims that are direct are not barred. However, the Court wants to emphasize that there are some direct claims that are barred by the Confirmation Order and the Plan, and there are also some derivative claims that are not barred.  This Memorandum Opinion attempts to address all of these claims.[116]

The Court also noted that it had

signed an order denying the Motion to Remand on June 7, 2010. [Adv. Doc. No. 79].  However . . . based upon the Plaintiffs' requested relief in their Objection to the Motion to Dismiss, the Court is going to remand (rather than dismiss without prejudice) those causes of action that are direct claims or claims not otherwise barred.[117]

The Bankruptcy Court's January 13, 2011, Memorandum Opinion and

Order additionally stated:

to the extent that any of this Court's oral findings of fact and conclusions of law made in open court on May 27, 2010 conflict with anything set forth in this Memorandum Opinion, the latter shall govern; and to the extent that anything set forth in this Memorandum Opinion does not encompass all of this Court's oral findings of fact and conclusions of law made in open court on May 27, 2010,

---

[115]Id. at 8-9.

[116]Id. at 9, n.7.

[117]Id. n.8.

the latter shall supplement what is set forth in this Memorandum Opinion.[118]

The Schermerhorn Parties have not appealed the Bankruptcy Court's January 13, 2011, Memorandum Opinion and Order formally adopting and modifying the oral findings of fact and conclusions of law made during the May 27, 2010, hearing.  Thus, the January 13, 2011, Memorandum Opinion and Order is final and the findings and conclusions made therein are final and unappealable, including findings and conclusions that (1) the Schermerhorn Parties had notice of the SkyPort bankruptcy but opted against participating therein in favor of waiting to file the state court action; (2) the Schermerhorn Parties had notice of the order confirming SkyPort's Chapter 11 Plan and the resulting discharge injunction, but nevertheless filed a Petition in state court that contained many derivative claims that belonged to SkyPort, the Reorganized Debtor, and were, therefore, barred from being brought under the express terms of the Plan; and (3) the State Court Petition contained factual allegations that in light of the confirmed plan were deceitful and/or disingenuous.[119]  These unappealed factual findings are more than sufficient to support the Bankruptcy Court's finding of bad faith expressly stated in its McKool Smith Memorandum Opinion, and relied upon to impose sanctions requiring the Schermerhorn Parties to pay attorneys' fees and costs incurred on

---

[118]Id. at 4.

[119]Id. at 3.

behalf of all of the state court defendants except Wilson Vukelich by both the Hoover Slovacek and McKool Smith law firms. Accordingly, the court concludes that the Bankruptcy Court did not err by failing to find that the Schermerhorn Parties engaged in bad faith.

3. <u>The Bankruptcy Court Did Not Err by Failing to Conduct a Hearing on Reasonableness or by Imposing Excessive Sanctions that Were Not the Least Severe Necessary to Achieve Their Purpose</u>

The Schermerhorn Parties' arguments that the Bankruptcy Court erred by failing to conduct a hearing on the reasonableness of the sanctions, and by awarding excessive sanctions that were not the least severe necessary to achieve their purpose, have no merit. The Bankruptcy Court provided the Schermerhorn Parties multiple opportunities to be heard and awarded only those sanctions found necessary to compensate the defendants for the reasonable attorneys' fees and costs incurred responding to the State Court Petition filed in violation of the injunctive provisions of the Confirmation Order and Plan entered in SkyPort's Chapter 11 case.

The issue of whether sanctions were warranted was heard at the May 27, 2010, hearing at the close of which the Bankruptcy Court granted the motion to dismiss and for sanctions filed by all of the state court defendants except Wilson Vukelich, and the application for preliminary injunction, attorneys' fees, and costs filed by the SkyPort Parties. The Bankruptcy Court explained:

-59-

And then finally . . . I will grant the sanctions,
[at] a separate hearing, to the extent that the
Defendants and the reorganized Debtor in Adversary 3150,
that is, the suit that was removed, want to seek
sanctions.

They should file -- first they should provide
invoices for legal services rendered to Mr. Smith, and
Mr. Goldman, and Mr. Fryar.   And that's the minimum
sanctions that's going to be awarded are the reasonable
attorneys fees and expenses incurred in getting the
Motion to Dismiss granted.

. . .

. . . [W]ith respect to the attorneys fees and time
spent, and any costs incurred for bringing the Motion
[to] Dismiss, I will impose sanctions at a minimum of
reasonable attorneys fees and costs.   Those'll be
determined at a separate hearing if the parties can't
agree.   And I'll give you a hearing date.

To the extent any additional [san]ctions are sought,
over and above reasonable attorneys fees and expenses,
file a separate pleading, so that parties can see what is
being sought.   And I'll set that for a hearing as well.[120]

The Bankruptcy Court instructed counsel for the non-Wilson

Vukelich Defendants and counsel for the Reorganized Debtor to

submit fee invoices relating to the prosecution of the original

motion for sanctions to counsel for the Plaintiffs by June 11,

2010,[121] and motions for additional sanctions by June 30, 2010.[122]

---

[120]Transcript of May 27, 2010, Hearing, Docket Entry No. 4:105
in Civil Action No. 4:11-cv-1524, pp. 293:23-294:24.   See also
McKool Smith Memorandum Opinion, Docket Entry No. 299 in Adversary
No. 10-03150, and Docket Entry No. 4-133 in Civil Action No. 4:11-
cv-1524, p. 6 ¶ 11 ("On May 27, 2010, this Court held a hearing on,
among other things, the Original Motion for Sanctions.   The Court
orally granted the motion. . .").

[121]Transcript of May 27, 2010, Hearing, Docket Entry No. 4:105
in Civil Action No. 4:11-cv-1524, pp. 294:6, 306:2-11.

[122]Id. at 307:14-308:12.

A hearing on the amount of attorneys' fees and expenses that the Schermerhorn Parties would be ordered to pay as sanctions was held on August 3, 2010,[123] and a hearing on the amount of additional sanctions they would be ordered to pay was held on October 15, 2010.[124]

      (a)   Orders Regarding Hoover Slovacek Fees

On July 1, 2010, the Schermerhorn Parties submitted a certificate of reasonableness stating that they accepted as reasonable the amount of fees and expenses requested by Hoover Slovacek for representing the CenturyTel and the Kubbernus Defendants for the period running from May 13, 2010, through June 9, 2010.[125] Paragraph 3 of the Certification states:

> Hoover Slovacek provided its invoice covering services rendered in the amount of $17,091.75 and expenses

---

[123]Transcript, August 3, 2010, Hearing, Docket Entry No. 160 in Adversary No. 10-03150, and Docket Entry Nos. 4-222 in Civil Action No. 4:11-cv-1524.

[124]Transcript of October 15, 2010, Hearing, Docket Entry No. 226 in Adversary No. 10-03150, and Docket Entry No. 4-111, p. 67:4 through No. 4-114 in Civil Action No. 4:11-cv-1524.

[125]Plaintiffs' Amended Certification of Reasonableness of Fees, Docket Entry No. 112 in Adversary No. 10-03150, and Docket Entry No. 4-69 in Civil Action No. 4:11-cv-1524, p. 2 ¶¶ 1-2.   The Certificate also stated that it was being submitted

> without prejudice to [the] Schermerhorn Parties' position that they should not be sanctioned and counsel fees should not be awarded in this matter, that counsel fees should be reduced on legal and equitable grounds, and that, in any event, the Century Client and Kubbernus Client are not entitled to have their fees reimbursed.

Id. at 3 ¶ 4.

advanced of $708.54 for the period May 13, 2010 through June 9, 2010. Plaintiffs accept the amount of fees and expenses as reasonable.[126]

On August 3, 2010, the Bankruptcy Court conducted a hearing on the reasonableness of fees and expenses at which counsel for the Schermerhorn Parties stipulated that the Hoover Slovacek fees and expenses were reasonable.[127]

On August 11, 2010, the Bankruptcy Court entered an agreed order expressly providing that the fees and expenses incurred by Hoover Slovacek (i.e., counsel for the Reorganized Debtor) in the amount of $17,800.29 are reasonable.[128]

During a show cause hearing held on October 15, 2010, when the Bankruptcy Court learned that the Schermerhorn Parties had not paid the Hoover Slovacek fees and costs,[129] counsel for the Schermerhorn

---

[126]Id. at 2 ¶ 3.

[127]Transcript, August 3, 2010, Hearing, Docket Entry No. 160 in Adversary No. 10-03150, and Docket Entry No. 4-222 in Civil Action No. 4:11-cv-1524, p. 12:21-22 (the Schermerhorn Parties' counsel stated: "First of all, we don't oppose the reasonableness of their fees.").

[128]Order Regarding Reasonableness of Hoover Slovacek Fees, Docket Entry No. 158 in Adversary No. 10-03150, and Docket Entry No. 4-88 in Civil Action No. 4:11-cv-1524.

[129]Transcript, October 15, 2010, hearing, Docket Entry No. 226 in Adversary No. 10-03150, and Docket Entry No. 4-110 in Civil Action No. 4:11-cv-1524, p. 16:10-18 (Counsel for the SkyPort Parties stated: "There's already an order out there where you have ordered our opponents to pay our attorneys' fees. They are unpaid. They are unpaid. We've not been paid our attorneys' fees. This Court's already awarded them. They filed a Certificate of Reasonableness. They are unpaid. Whatever happens, we'd like deadlines for the payment of whatever sanctions are awarded and attorney's fees are awarded.").

Parties restated their agreement that the Hoover Slovacek fees and
expenses were reasonable.[130]  The Bankruptcy Court directed counsel
for the parties represented by Hoover Slovacek to submit an order
directing the Schermerhorn Parties to Pay $17,800.29 to Hoover
Slovacek by October 31, 2010.[131]   On October 29, 2010, the
Bankruptcy Court signed the Order Directing Payment to Hoover
Slovacek in the amount of $17,800.29 by October 31, 2010.[132]

Because on May 27, 2010, the Bankruptcy Court conducted a
hearing at which the defendants' requests for sanctions in the form
of attorneys' fees and costs were considered and found to be

---

[130]Id. at 16:25-17:6 ("Now, with respect to the $17,000 that
the Court -- the $17,000 they requested on the sanctions for legal
fees -- the Court has already indicated that you are going to
award, we agreed to the reasonableness of that."). See also id. at
Docket Entry No. 4-114 in Civil Action No. 4:11-cv-1524, p. 205:2-8
(The Bankruptcy Court restated the Schermerhorn Parties' position
that the fees and expenses sought by Hoover Slovacek were
reasonable: "The sanctions requested initially by the SkyPort
parties was for attorneys' fees.  I directed -- I granted that
request -- directed Ms. Catmull or her partner, Mr. Rothberg, to
submit fee invoices to Counsel for the Schermerhorn parties who
have come back and said the fees are reasonable and they don't
contest them, and specifically that amount is $17,800.29, so that's
not an issue.").

[131]Transcript, October 15, 2010, Hearing, Docket Entry No. 226
in Adversary No. 10-03150, and Docket Entry No. 4-111 in Civil
Action No. 4:11-cv-1524, p. 59:8-11 (The Bankruptcy Court stated:
"With respect to the $17,000, you can give me a separate order that
says that should be paid, why don't we say, on or before
October 31, make it by the end of the month.  Let me have that
order within a week. . .").

[132]Order Directing Payment to Hoover Slovacek, Docket Entry
No. 233 in Adversary No. 10-03150, and Docket Entry No. 4-116 in
Civil Action No. 4:11-cv-1524.

warranted, and because on August 3, 2010, the Bankruptcy Court
conducted a hearing at which the Schermerhorn Parties could have
contested -- but chose not to contest -- the reasonableness of
Hoover Slovacek's invoices of fees and costs, the Schermerhorn
Parties' argument that the Bankruptcy Court erred by failing to
conduct hearings either on whether sanctions were warranted or
whether the amount of sanctions ordered was reasonable misstates
undisputed facts.   Because on July 1, 2010, the Schermerhorn
Parties submitted a certificate of reasonableness stating that they
accepted as reasonable the invoices for fees and expenses submitted
by Hoover Slovacek totaling $17,800.29; because at hearings held on
August 3 and October 15, 2010, the Schermerhorn Parties' counsel
restated their acceptance of the Hoover Slovacek invoices for
$17,800.29 as reasonable; and because the Bankruptcy Court ordered
the Schermerhorn Parties to pay Hoover Slovacek the amount the
Schermerhorn Parties agreed was reasonable, i.e., $17,800.29, as
sanctions for filing the State Court Petition, the Schermerhorn
Parties are estopped from arguing that sanctions in this amount
were excessive or not the least severe sanction necessary to
achieve the court's purpose.   See Spicer v. Laguna Madre Oil &
Gas II, LLC, 647 F.3d 547 (5th Cir. 2011) (stating three require-
ments for judicial estoppel:  (1) a clearly inconsistent position;
(2) the court accepted the original position; and (3) no
inadvertence).  Accordingly, the Order Regarding Reasonableness of
Hoover Slovacek, LLP Fees (Doc. 132) and Continuance of Hearing on

-64-

Motion for Additional Sanctions (Doc. 104), Docket Entry No. 158, and the Order Directing the Joanne Schermerhorn et al. to Pay $17,800.29 to Hoover Slovacek LLP by October 31, 2010, Docket Entry No. 233, will both be affirmed.

> (b)  Orders Regarding McKool Smith Fees and Costs

On June 11, 2010, McKool Smith, acting on behalf of the CenturyTel and the Kubbernus Defendants filed the Notice of Filing of Redacted Fee Statements of McKool Smith P.C. seeking fees and expenses for the period from March 8 through May 31, 2010, in the amount of $571,111.67.[133]

On June 29, 2010, McKool Smith filed Defendants' Motion for Additional Sanctions seeking

> an award of additional sanctions against Plaintiffs of $75,000 for an appeal to the District Court, $75,000 for an appeal to the Circuit Court, and $250,000 in the event of an appeal to the United States Supreme Court. Also, they ask for coercive sanctions of $350 per diem for each day that the sanctions remain unpaid and the sanctions order remains un-stayed, with the right to seek additional coercive measures in the future.[134]

On June 30, 2010, the Schermerhorn Parties submitted a Certification on Reasonableness of Fees,[135] and on July 1, 2010,

---

[133]Docket Entry No. 87 in Adversary No. 10-03150, and Docket Entry No. 4-52 in Civil Action No. 4:11-cv-1524.

[134]Docket Entry No. 103 in Adversary No. 10-03150, and Docket Entry No. 4-65 in Civil Action No. 11-cv-1524, pp. 1-2.

[135]Plaintiffs' Certification on Reasonableness of Fees, Docket Entry No. 107 in Adversary No. 10-03150, and Docket Entry No. 4-204 in Civil Action No. 4:11-cv-1524.

they submitted an Amended Certification on Reasonableness of Fees; both certifications asserted objections to the fees and expenses submitted by McKool Smith for the period March 8, 2010, through May 30, 2010, as excessive and including entries for unnecessary and duplicative work and for work unrelated to the violation determined to warrant sanctions.[136]

On July 23, 2010, the Schermerhorn Parties filed their Objection to Removing Defendants' Request for Additional Sanctions and Memorandum on the Unreasonableness of Their Fee Request arguing inter alia under guidelines set forth in Topalian v. Ehrman, 3 F.3d 931, 936 (5th Cir. 1993), that reduced sanctions were warranted because (1) the non-Wilson Vukelich Defendants failed to mitigate their fees and costs; (2) the fees sought are not wholly related to the violation and are not reasonable; and (3) the sanctions requested are not the least severe to achieve the purpose of the rule under which they were imposed.[137]

---

[136]Plaintiffs' Amended Certification of Reasonableness of Fees, Docket Entry No. 112 in Adversary No. 10-03150, and Docket Entry No. 4-69 in Civil Action No. 4:11-cv-1524, p. 2 ¶ 3.    The certificate also stated that it was being submitted

> without prejudice to [the] Schermerhorn Parties' position that they should not be sanctioned and counsel fees should not be awarded in this matter, that counsel fees should be reduced on legal and equitable grounds, and that, in any event, the Century Client and Kubbernus Client are not entitled to have their fees reimbursed.

Id. at 3 ¶ 4.

[137]See Docket Entry No. 133 in Adversary No. 10-03150, and Docket Entry Nos. 4-79 and 4-80 in Civil Action No. 4:11-cv-1524.

-66-

On July 30, 2010, the non-Wilson Vukelich defendants filed their Response to the Objection to the Motion for Sanctions, asserting _inter alia_ that the Schermerhorn Parties were continuing to violate the Bankruptcy Court's orders, and that the fees requested by the Non-Wilson Vukelich defendants are supported by the factors set forth in _Johnson v. Georgia Highway Express_, 488 F.2d 714 (5th Cir. 1974).[138]

On August 2, 2010, the McKool Smith law firm filed a Supplemental Notice of Filing of Redacted Fee Statements of McKool, Smith P.C., seeking additional fees and expenses incurred from July 1, 2010, through July 31, 2010, in the amount of $107,435.02.[139]

On August 3, 2010, the Bankruptcy Court held a hearing, _inter alia_, on the McKool Smith applications for sanctions in the form of attorneys' fees and expenses.[140]   At the end of the hearing the

---

[138]_See_ Defendants' Response to Plaintiffs' Objection to Defendants' Request for Additional Sanctions and Defendants' Motion to Strike Pleadings [Relates to Docket #133], Docket Entry No. 136 in Adversary No. 10-03150, and Docket Entry Nos. 4-82 through 4-84 in Civil Action No. 4:11-cv-1524.

[139]Docket Entry No. 148 in Adversary No. 10-03150, and Docket Entry No. 4-85 in Civil Action No. 4:11-cv-1524.   Because this request was based on invoices for fees and expenses incurred during July of 2010, which were clearly unrelated to the prosecution of the original motion for sanctions, the Bankruptcy Court declined to consider it.   _See_ McKool Smith Memorandum Opinion, Docket Entry No. 299 in Adversary No. 10-03150 and Docket Entry No. 4-133 in Civil Action No. 4:11-cv-1524, p. 13 n.11.

[140]Transcript of August 3, 2010, Hearing, Docket Entry No. 160 in Adversary No. 10-03150, and Docket Entry Nos. 4-222 through 4-226 in Civil Action No. 4:11-cv-1524.

Bankruptcy Court took the McKool Smith fee and expense requests under advisement.[141]

On March 31, 2011, the Bankruptcy Court entered a Memorandum Opinion and corresponding Order sanctioning the Schermerhorn Parties in the amount of $74,178.00 for fees and expenses billed by McKool Smith.[142]

Since the Bankruptcy Court conducted a full-day hearing on the McKool Smith request for fees and expenses, the Schermerhorn Parties do not dispute that they received a hearing on the issue of these fees. Moreover, since the amount that the Bankruptcy Court ordered them to pay McKool Smith, i.e., $74,178.00, was far less than the amount that McKool Smith sought, i.e., $571,111.67, the Schermerhorn Parties do not seriously contest the reasonableness of the fees and expenses that they were ordered to pay McKool Smith. Instead, asserting that the Bankruptcy Court "was seeking to deter

---

[141]Id. at Docket Entry No. 4-226 in Civil Action No. 4:11-cv-1524, p. 232:10.

[142]See Memorandum Opinion Regarding: (1) Notice of Filing of Redacted Fee Statements submitted by McKool Smith, P.C.; (2) Plaintiff's Certification/ Amended Certification on Reasonableness of Fees Submitted by McKool Smith, P.C.; and (3) Defendants' Motion for Additional Sanctions [Adv. Doc. Nos. 87, 107, 112 & 103], Docket Entry No. 299 in Adversary No. 10-03150, and Order Relating to: (1) Notice of Filing of Redacted Fee Statements submitted by McKool Smith, P.C.; (2) Plaintiff's Certification/ Amended Certification on Reasonableness of Fees Submitted by McKool Smith, P.C.; and (3) Defendants' Motion for Additional Sanctions [Adv. Doc. Nos. 87, 107, 112 & 103], Docket Entry No. 300 in Adversary No. 10-03150; Docket Entry Nos. 4-133 and 4-134, respectively, in Civil Action No. 4:11-cv-1524.

parties from 'thumbing their noses' at its orders,"[143] the Schermerhorn Parties argue that the Bankruptcy Court erred by sanctioning them

> for much more than that — he held them responsible not only for what related to what the Court held to be the "sanctionable" actions, but for the ENTIRE amount of attorneys' fees and expenses related to the "direct" versus "derivative" issue as well. Furthermore, the Bankruptcy Court did not consider any mitigation of fees and costs or whether the sanctions imposed were not the least severe sanctions adequate to achieve the purpose of what it was attempting to deter.[144]

These arguments have no merit.

In reaching the decision that the Schermerhorn Parties should be sanctioned for only a fraction of the amount of fees and expenses that McKool Smith sought, the Bankruptcy Court used the applied the lodestar method to determine what reasonable attorneys' fees would be within the context of this case, and expressly analyzed the resulting amount pursuant to the factors set forth in Johnson, 488 F.2d 714. See In re Cahill, 428 F.3d at 539-40 (affirming bankruptcy court's application of the lodestar method in determining a reasonable fee award for Chapter 13 debtors' attorneys). In pertinent part the Bankruptcy Court concluded that

> the lodestar fee should be adjusted based on its consideration of the final Johnson factor — namely, the results obtained in the litigation. In prosecuting the Original Motion for Sanctions, the Non-Wilson Vukelich

---

[143]Brief of Appellants - The Schermerhorn Parties, Docket Entry No. 16 in Civil Action No. 4:11-cv-1524, p. 49.

[144]Id.

Defendants sought dismissal of all of the causes of action set forth in the Original Petition as derivative claims that belong to the Reorganized Debtor and are barred from being brought under the express terms of the Plan and Confirmation Order. [Finding of Fact No. 9]. In issuing its oral ruling on May 27, however, the Court concluded that not all of the claims and relief sought in the Original Petition are disallowed. The Court gave the parties and their counsel approximately one month to agree as to which claims are derivative with respect to Skyport and which claims are direct, or not otherwise enjoined by the Plan and Confirmation Order. [May 27, 2010 Tr. 302:1-306:1]. At a hearing held on June 22, 2010, the parties conceded that they were unable to reach an agreement. [Adv. Doc. No. 272, p. 3]. The Court then issued a memorandum opinion and corresponding order setting forth which causes of action were dismissed with prejudice and which were remanded to state court for further prosecution. [Adv. Doc. Nos. 272 & 274].

The Court ultimately concluded that only 51 out of 87 causes of action alleged in the Original Petition were derivative claims, either in whole or in part. [Adv. Doc. Nos. 272 & 274]. Because the Non-Wilson Vukelich Defendants achieved dismissal of 59% of the Plaintiffs' causes of action, the court finds that McKool Smith is only entitled to that same percentage of the fees requested in the Fee Statements. . . . Accordingly, the Court reduces the lodestar fee from $249,230.00 to $147,045.70 (*i.e.*, $249.230.00 x 0.59).[145]

Then, observing that many of the billing entries in the Fee Statements (*i.e.*, 70.66%) "lumped" activities in such a manner that the Court was unable to discern how much time was allocated to each activity and the respective value rendered by the particular person at McKool Smith performing the service, the Bankruptcy Court concluded that a further 50% reduction of the lodestar fee was

---

[145]McKool Smith Memorandum Opinion, Docket Entry No. 299 in Adversary No. 10-03150, and Docket Entry No. 4-133 in Civil Action No. 4:11-cv-1524, pp. 25-26.

appropriate.  Accordingly, the Court reduced the lodestar fee from $147,045.70 to $73,522.85 (*i.e.*, $147,045.70 x 0.50).

Finally, the Bankruptcy Court analyzed whether the expenses requested were reasonable.  Although the Fee Statements contained $1,774.67 in expenses, the Court concluded that only $655.15 of expenses were reasonable.  In sum, citing Chambers, 111 S. Ct. at 2123, and Topalian, 3 F.3d at 936, the Bankruptcy Court concluded that McKool Smith was entitled to $73,522.85 in fees and $655.15 in expenses for a total of $74,178.00.[146]  The Court explained that

> [a]lthough the [Schermerhorn Parties] did file the Original Petition in direct contravention of the Plan and Confirmation Order, thus warranting sanctions, the Court does not believe that an award of $571,111.67 (*i.e.*, the amount of fees and expenses billed by McKool Smith in the Fee Statements) is necessary given the nature and extent of the Plaintiffs' bad faith conduct.[147]

The Bankruptcy Court denied McKool Smith's motion for additional sanctions after determining that coercive sanctions were not warranted.[148]

Because the Schermerhorn Parties have failed to cite to any evidence or law capable of supporting the conclusion that the Bankruptcy Court abused its discretion by sanctioning them to pay McKool Smith $74,178.00 in fees and expenses, the McKool Smith Memorandum Opinion and corresponding Order will both be affirmed.

---

[146]Id. at 30.

[147]Id. at 30-31.

[148]Id. at 31-33.

See <u>Whitehead</u>, 332 F.3d at 803 ("Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court.").

> (c)   Order for Additional Sanctions in the Form of Actual Damages Suffered by SkyPort

On June 30, 2010, the Reorganized Debtor filed its Motion for Additional Sanctions, requesting: "(a) "[c]ompensation for [t]ime and [e]ffort [s]pent by SkyPort [p]ersonnel: $103,213[, and] (b) [p]unitive [d]amages: $233,300."[149]

On October 15, 2010, the Bankruptcy Court conducted a hearing on SkyPort's motion for additional sanctions.[150]  SkyPort sought two components of damages:   employee and officer time and rebranding costs.[151]   The Bankruptcy Court issued an oral ruling at the close of this hearing, and reduced that ruling to writing on November 9, 2010, by issuing its Order for Additional Sanctions, Docket Entry No. 242, awarding SkyPort additional sanctions against the Schermerhorn Parties in the aggregate amount of $8,584.65.[152]   This

---

[149]<u>See</u> SkyPort Global Communications, Inc.'s Motion for Additional Sanctions, Docket Entry No. 104 in Adversary No. 10-03150, and Docket Entry No. 4-66 in Civil Action No. 4:11-cv-1524, p. 4 ¶ 10.

[150]Transcript of October 15, 2010, Hearing, Docket Entry No. 226 in Adversary No. 10-03150, and Docket Entry No. 4-111, p. 67:4 through No. 4-114 in Civil Action No. 4:11-cv-1524.

[151]<u>See id.</u>, Docket Entry No. 4-111, Civil Action No. 4:11-cv-1524, p. 67:12-14.

[152]Order Awarding Additional Sanctions Against Joanne Schermerhorn et al., Docket Entry No. 242 in Adversary No. 10-
(continued...)

order has been appealed by the Schermerhorn Parties and cross-appealed by the SkyPort Parties.

### (1)   Bankruptcy Court's Conclusion

At the conclusion of the October 15, 2010, hearing the Bankruptcy Court explained the issues to be determined:

> I make a legal conclusion that the Complaint filed in Harris County which was removed to this Court 11 -- 10 out of 111 pages represented a direct attack on the Confirmation Order. . . Attorney's fees have been awarded, so the question is, should I take any further action?  The Movants here want me to award the rebranding costs and $97,275 for the time spent by Mr. Kubbernus, Mr. Whitworth and Ms. Maus.[153]

The Bankruptcy Court declined to order the cost of rebranding as sanctions because the SkyPort Parties failed to present enough evidence either to substantiate their rebranding costs or to establish that the rebranding costs were caused by the Schermerhorn's sanctionable conduct.[154]  The Bankruptcy Court based its order for additional sanctions on the amount of time that three SkyPort employees spent responding to the State Court Petition multiplied by the reasonable hourly rates for their services.  The Bankruptcy Court declined to compensate SkyPort for all of the

---

[152](...continued)
03150, and Docket Entry No. 4-117 in Civil Action No. 4:11-cv-1524. <u>See also</u> Transcript, October 15, 2010, Hearing, Docket Entry No. 226 in Adversary No. 10-03150, and Docket Entry No. 4-114 in Civil Action No. 4:11-cv-1524, p. 214:9-13.

[153]Transcript of October 15, 2010, Hearing, Docket Entry No. 226 in Adversary No. 10-03150, and Docket Entry No. 4-114 in Civil Action No. 4:11-cv-1524, p. 212:1-3.

[154]<u>Id.</u> at 212:4-16.

hours requested because those hours represented time spent responding to all the claims, not just the claims that the Court found to have been a direct attack on the Confirmation Order and Plan. The Bankruptcy Court explained: "What I am going to do is say that 10 pages out of 111 pages was a full frontal attack on my Confirmation Order and so 10 pages divided by 111 pages is 9 percent and I'm going to take the 95,385 and multiply times 9 percent and I get a figure of 8,584.65."[155] The Court awarded that amount and denied all other relief sought in the motion for additional sanctions.[156]

### (2) The Schermerhorn Parties' Appeal

The Schermerhorn Parties' appeal of the Bankruptcy Court's Order Awarding Additional Sanctions is based on their contention that sanctions were not warranted because the State Court Petition was not a frontal attack on the Confirmation Order and Plan, and was not filed in bad faith. For the reasons stated in §§ IV.B.1-2, above, the court has already rejected those arguments.

### (3) SkyPort's Cross-Appeal

SkyPort argues on cross-appeal that the Bankruptcy Court erred when it (1) declined to award $233,000 in punitive damages, and

---

[155]Id. at 214:9-13.

[156]Id. at 5:20-22 and 216:4-5 ("All other relief will be denied for this particular motion which is 104.").

(2) awarded only $8,584.65, instead of the $97,275 sought at the hearing for employee time and effort spent responding to the State Court Petition.[157]   SkyPort argues that the Bankruptcy Court erred by ordering sanctions of only $8,584.65 for lost employee and officer time because the Court used an arbitrary formula to calculate that amount, and because the record contained enough evidence to substantiate SkyPort's request for rebranding costs.[158] These arguments have no merit.  SkyPort argues that the Bankruptcy Court's detailed subsequent memorandum opinion parsing the State Court Petition -- claim by claim -- is a far better guide.  SkyPort argues that using that approach the fee reduction should be 66 percent instead of the 91 percent imposed by the Bankruptcy Court.[159]  Since, as SkyPort acknowledges, the order for additional sanctions was issued before the memorandum opinion in which the Bankruptcy Court parsed the State Court Petition claim by claim, the Bankruptcy Court did not err by failing to use the more detailed analysis of the State Court Petition that appeared in that subsequently issued instrument.

---

[157]Brief of SkyPort Global Communications, Inc. (n/k/a TrustComm, Inc.), Appellee/Cross-Appellant, Docket Entry No. 25, pp. 4-5.  SkyPort (n/k/a TrustComm, Inc.) asserts that "due to the severe impact of the Schermerhorn litigation on SkyPort, it was compelled to change its name to TrustComm." Id. at 6 n.5.

[158]Brief of SkyPort Global Communications, Inc. (n/k/a TrustComm, Inc.), Appellee/Cross-Appellant, Docket Entry No. 25, pp. 31-37.

[159]Id. at 36.

Nor did the Bankruptcy Court err by concluding that SkyPort failed to present enough evidence at the October 15, 2010, hearing to substantiate its claim for punitive damages measured by the cost of rebranding.  SkyPort argues that its chief financial officer testified that typically

> we would do this in-house . . . we got into a bind when we just did not have the time.
>
>    [SkyPort's] officers testified, and the Court found, that they spent 265 hours responding to the Schermerhorn Parties' litigation in violation of the discharge injunction. . . The Bankruptcy Court could have inferred that [] the reason [SkyPort] "got into a bind" and "did not have the time" is because [SkyPort] was busy responding to the bad faith litigation.[160]

SkyPort's recognition that the Bankruptcy Court would have to have inferred the existence of a link between the need for employees and officers to respond to the State Court Petition and the lack of time to accomplish rebranding in-house, substantiates the Bankruptcy Court's conclusion that the record did not contain evidence to establish that the rebranding costs were caused by the Schermerhorn Parties' sanctionable conduct.

Because neither the Schermerhorn Parties nor the SkyPort Parties have pointed to evidence or legal authority showing that the Bankruptcy Court abused is discretion by ordering the Schermerhorn Parties to pay SkyPort $8,584.65 in additional sanctions for lost employee time, the Order Awarding Additional

---

[160]Id. at 37.

Sanctions Against Joanne Schermerhorn, et al., Docket Entry No. 242, will be affirmed.

## C.   Contempt Orders

The Schermerhorn Parties appeal seven orders arising from three motions for contempt filed by the SkyPort Parties. The Schermerhorn Parties argue that the Bankruptcy Court erred by finding that they violated the June 10, 2010, Preliminary Injunction in bad faith, by imposing sanctions in the form of attorneys' fees and costs that were excessive, and by failing to consider whether the attorneys' fees and costs were mitigated or were the least severe sanctions necessary to achieve their purpose. The SkyPort Parties argue that the Bankruptcy Court erred by failing to award as sanctions the entire amount spent preparing and prosecuting the motions for contempt.

### 1.   The SkyPort Parties' First Motion for Contempt

(a)   Additional Factual and Procedural Background

On September 24, 2010, the SkyPort Parties filed an instrument titled: Motion by SkyPort Global Communications, Inc. that Joanne Schermerhorn, *et al.* and Their Counsel of Record Appear and Show Cause Why They Should Not Be Held in Contempt of the June 10, 2010 Preliminary Injunction ("SkyPort's First Motion for Contempt"), Docket Entry No. 173 in Adversary No. 10-03150.[161]   This motion

---

[161]See Docket Entry No. 4-96 in Civil Action No. 4:11-cv-1524.

argued that the Schermerhorn Parties violated the June 10, 2010,
Preliminary Injunction by violating the prohibitions against
pursuing any claims against the state court defendants, and against
unauthorized contact with SkyPort's "former or current vendors."[162]
The motion asserted:

> 12. In defiance of the . . . injunction . . . on
> September 20, 2010, a caller identifying himself as
> "Mathew Weldon" who works with "Sam Goldman" (i.e.,
> counsel for the Schermerhorn Group) contacted a vendor of
> SkyPort, its accounting firm, Hein & Associates. The
> contact was in the form of a voice mail that indicated the
> caller had questions about certain SkyPort financial
> statements. The voice mail requested a return phone call.
>
> 13. According to Sam Goldman's law firm website, Mathew
> Weldon is an attorney who works at the firm.
>
> 14. The phone call violated the preliminary injunction's
> prohibition against contact with former or current
> SkyPort vendors.
>
> 15. The phone call violated the preliminary injunction's
> prohibition against "pursuing any and all claims or
> causes of action, derivative or direct, against all of
> the Defendants."[163]

The SkyPort Parties sought relief in the form of an order holding
each member of the Schermerhorn Group in contempt of the
Preliminary Injunction, attorneys' fees and costs incurred bringing
and prosecuting the motion for contempt, and punitive damages.[164]

On September 27, 2010, the Bankruptcy Court issued an Order
Directing the Schermerhorn Group and Its Counsel to Appear and Show

---

[162]Id. at 4 ¶¶ 10-11.

[163]Id. at 4-5 ¶¶ 12-15.

[164]Id. at 6 ¶¶ 19-21.

Cause Why They Should Not Be Held in Contempt, Docket Entry No. 177, setting a hearing for October 14, 2010.[165]

On October 14 and 15, 2010, the Bankruptcy Court held a hearing, _inter alia_, on SkyPort's First Motion for Contempt.[166]  At the conclusion of the hearing the Bankruptcy Court found that the Schermerhorn Parties through their counsel at Goldman's office violated the June 10, 2010, Preliminary Injunction by contacting two of SkyPort's former vendors, i.e., the accounting firms of Hein & Associates and Deloitte Touche.[167]  In reaching this conclusion the Bankruptcy Court rejected the Schermerhorn Parties' argument that the word "vendors" does not include accountants because accountants are a learned profession in favor of the word's plain meaning, i.e., someone who sells goods or services.[168]  The Bankruptcy Court also rejected their argument that any violation

---

[165]_See_ Docket Entry No. 4-96 in Civil Action No. 4:11-cv-1524.

[166]_See_ Transcript of October 14-15, 2010, Hearing, Docket Entry Nos. 225-226 in Adversary No. 10-03150, and Docket Entry Nos. 4-107 through 4-111 in Civil Action No. 4:11-cv-1524.

[167]Transcript of October 14, 2010, Hearing, Docket Entry No. 225 in Adversary No. 10-03150, and Docket Entry No. 4-110 in Civil Action No. 4:11-cv-1524, 30:12-14 ("I make a legal conclusion that the Plaintiffs through their Counsel at Mr. Goldman's office contacted former vendors, these two accounting firms."); 32:10-12 ("And I therefore make a legal conclusion that my preliminary injunction has been violated by direct contact with former vendors of SkyPort.").

[168]_Id._ at 31:17-18 ("A vendor is someone who sells goods or services in my judgment.  That's the plain meaning."); 32:7-9 ("[M]y view of the word vendor is . . . 'anyone who provides goods or services,' and so that's the plain meaning I apply to this order.").

was inadvert or, alternatively, a necessary component of due
diligence needed to support their attempt to initiate a new
adversary proceeding:

> My Preliminary Injunction said, sit tight, don't
> pursue any further claims or causes of action until
> further Order of this Court and yet that was done,
> perhaps because the Plaintiffs are antsy that I haven't
> issued my Order as to what's derivative and what's
> direct.  Nevertheless, that's not an excuse for violating
> the Injunction.

> I also looked at the transcript and I made it very
> clear I was unhappy with the arguments that were made to
> me that you didn't mean -- Plaintiffs didn't mean to seek
> a Trustee over reorganized SkyPort.  That was clearly
> requested in the pleading filed in Harris County District
> Court.

> There is no question that's how that pleading reads
> and it's on page 81. . .

> And, the argument I heard really was we didn't mean
> to do that, and I've made it clear I thought it was [a]
> disingenuous pleading, if not a dishonest pleading for
> among other reasons that it also said that the Plaintiffs
> were holders in shares of SkyCom and that couldn't be true
> because SkyCom was collapsed into SkyPort and the shares
> were eliminated as part of the confirmation of a Plan.

> So, there's already a history in this Court of
> Plaintiff's Counsel saying, "Gee, I really didn't mean
> it," and that's, in effect, what I heard from Mr. Goldman
> yesterday is "I really didn't mean to violate the Order."

> And, it's hard for me to sit here and listen to that
> when I've already, I thought, expressed my displeasure
> with such conduct back when I made my ruling in May.
> This is not just simple mistakes.  That pleading that was
> filed in Harris County was carefully drafted insofar as
> you don't draft a pleading for 100 some-odd pages, that
> specifically, without meaning what you're saying and
> saying what you're meaning, and you don't call
> accountants without intending to pursue a claim in doing
> your due diligence.

And to say, in effect, now I seek the Court's forgiveness when what should have been done was to have sought this Court's permission to contact or to contact vendors if you thought they were -- or to contact accountants if you thought they weren't vendors, you should have sought this Court's permission because you knew you were doing it in order to achieve the objective of convincing me to allow you to file suit for fraud on the Court.

I am unhappy with what I see is continuing misconduct of Counsel.[169]

The Bankruptcy Court granted the motion for contempt,[170] holding the Schermerhorn Parties in contempt of the June 10, 2010, Preliminary Injunction for violating the prohibition against contacting SkyPort's accountants, and holding their attorneys – Samuel Goldman and Eric Fryar -- jointly and severally liable to SkyPort for attorneys' fees and costs incurred in the preparation and prosecution of the motion for contempt, and the time spent by SkyPort employee Douglas Whitworth in responding to the contempt.[171]

The rulings made at the conclusion of the October 14-15, 2010, hearing were reduced to writing on November 9, 2010, in the First Contempt Order, Docket Entry No. 243.[172]  The order directed SkyPort's counsel to present invoices reflecting its attorneys'

---

[169]Id. at 44:10-46:8.

[170]Transcript of October 15, 2010, Hearing, Docket Entry No. 226 in Adversary No. 10-03150, and Docket Entry No. 4-111 in Civil Action No. 4:11-cv-1524, p. 56:23.

[171]Id. at 56:23-57:17; 60:20-61:4, 64:4-20; 65:7-19.

[172]Docket Entry No. 4-118 in Civil Action No. 4:11-cv-1524.

fees and costs to the Schermerhorn Parties' counsel by October 22, 2010.[173]

On October 29, 2010, the Objection of the Schermerhorn Parties to the Attorneys' Fee Request of SkyPort Global Communications [Relates to Doc. No. 173 and 174], was filed and assigned Docket Entry No. 229.[174]  On November 23, 2010, the Bankruptcy Court held a hearing on the Schermerhorn Parties' objections to the SkyPort Parties' invoices.[175]  The Bankruptcy Court heard testimony for and against the sums sought in SkyPort's invoices, and after meticulously considering all the contested entries the Court held Goldman and Fryar jointly and severally liable to pay SkyPort sanctions of $10,200.00 for attorneys' fees and $3,125.00 for costs incurred preparing and prosecuting the contempt motion.[176]  The Bankruptcy Court's findings and conclusions were reduced to writing on December 7, 2010, in the Order Disposing of Docket Items 227 and 229, filed December 7, 2010, Docket Entry No. 261.[177]

---

[173]Id. at 2.

[174]Docket Entry No. 4-272 in Civil Action No. 4:11-cv-1524.

[175]Docket Entry No. 345 in Adversary No. 10-03150, and Docket Entry No. 4-315 in Civil Action No. 4:11-cv-1524.

[176]Id. at 41:7-18.

[177]Docket Entry No. 4-120 in Civil Action No. 4:11-cv-1524. Docket Entry No. 227 referenced in the title was a proposed contempt order.  The First Contempt Order, when signed and filed on November 9, 2010, by the Bankruptcy Court, was Docket Entry No. 243 in Adversary No. 10-03150, and Docket Entry No. 4-118 in Civil Action No. 4:11-cv-1524.

(b)   The Schermerhorn Parties' Appeal

The Schermerhorn Parties appeal both the First Contempt Order, Docket Entry No. 243, and the Disposal Order, Docket Entry No. 261.

The Schermerhorn Parties do not dispute that they were aware of the June 10, 2010, Preliminary Injunction,[178] and that an associate at Goldman's law firm attempted to contact SkyPort's former accountants and left a voicemail with one of them asking for a return phone call.[179]   Instead, the Schermerhorn Parties argue that the Bankruptcy Court erred by holding them in contempt for having contacted SkyPort's accountants in bad faith because

---

[178]Transcript of October 14, 2010, Hearing, Docket Entry No. 225 in Adversary No. 10-03150, and Docket Entry No. 4-108 in Civil Action No. 4:11-cv-1524, pp. 52:10-56:8 (Goldman testifying that he was aware of the Preliminary Injunction and its content).

[179]Transcript of October 14, 2010, Hearing, Docket Entry No. 225 in Adversary No. 10-03150, and Docket Entry No. 4-107 in Civil Action No. 4:11-cv-1524, pp. 26:23-27:19 (Counsel for the Schermerhorn Parties acknowledged: "And with respect to the contempt.   The only -- the issue that was brought forward was a single phone message that was left by Matt Weldon with an accounting firm.   The accounting firm was the account[ant]s for Skycom in 2006.   The purpose of the telephone call which is undisputed was to fact check a fact that was relevant to a motion that was being -- that was then thereafter filed with this Court. We believe that, you know, that we were acting properly in term -- in our Rule 11 obligation to do a reasonable investigation of the facts before we represent them to the Court.   There is no pretense that there was any harm, potential or otherwise, to the reorganized Debtor and the evidence will show that the only way that this would be a violation of the Order is if the Court holds that the Skycom auditors from 2006 are former vendors of SkyPort, a different company.   And, frankly, Mr. Weldon and Mr. Goldman -- it never occurred to them that an auditor, a member of a learned profession is a vendor and we have submitted a summary judgment motion.   There are cases that distinguish between vendors and members of learned professions.").

> [i]n light of the purpose of the June 10 Preliminary
> Injunction to protect SkyPort's business relationships,
> there was no concern that [Hein & Associates] might cut
> off the sale of products or services to SkyPort. Indeed,
> [Hein & Associates] immediately notified Kubbernus of the
> voicemail so it could not have negatively impacted
> [Hein & Associates'] relationship with SkyPort. . . As
> testified to at the October 2010 Hearing, there was no
> conscious wrongdoing through some "ulterior motive" — the
> only motive was to conduct due diligence on a factual
> allegation the Schermerhorn Parties intended to allege in
> a "fraud on the court" complaint — one [the Schermerhorn
> Parties] believed would relieve the Court's ire against
> them for going to the State Court with their allegations
> of fraud.[180]

The Schermerhorn Parties' argument that the Bankruptcy Court erred

by finding that they had violated the June 10, 2010, Preliminary

Injunction in bad faith has no merit.

The Schermerhorn Parties do not dispute that the Preliminary

Injunction prohibited them from contacting all of SkyPort's

vendors, or that Goldman's associate contacted SkyPort's

accountants.[181]  Instead, they argue that the Preliminary Injunction

was not violated -- or was not violated in bad faith -- because

under Texas case law accountants are not vendors but members of a

learned profession, and because the contact was made in an effort

to conduct due diligence for filing a motion to initiate a new

adversary proceeding for fraud on the court.  At the October 14,

---

[180]Brief of Appellants - The Schermerhorn Parties, Docket Entry
No. 16 in Civil Action No. 4:11-cv-1524, p. 51.

[181]Transcript, October 14, 2010, Hearing, Docket Entry No. 4-
109 in Civil Action No. 4:11-cv-1524, p. 104:7-9 (Counsel for the
Schermerhorn Parties states:  ". . . there really are not any
factual issues.  We made the telephone call and we filed a motion,
okay.").

2010, hearing, the Schermerhorn Parties cited <u>Cashway Building Materials, Inc. v. McCurdy</u>, 553 S.W.2d 787, 789-90 (Tex. Civ. App.—El Paso 1977, writ ref'd n.r.e.), in support of their argument that an accountant is a learned professional, not a vendor:

> Now, Mr. Goldman testified that in his mind, a vendor is not -- a learned professional is not a vendor. We cited to you the <u>Cashway</u> case, analyzing Texas law, which is 553 S.W.2d, 787 in our brief, which incidentally, Ms. Catmull's got it wrong. We're not saying that a vendor is not a seller of services, and that case specifically holds that vendors can be both sellers of services and sellers of goods, but it does cite the Texas law that distinguishes learned professions.
>
> The actual practice in Bankruptcy Court is that professions are treated differently in terms of their compensation than critical vendors. The list in the exhibit that the Court took judicial notice, that lists all the professionals, not vendors, includes lawyers.
>
> Okay, so if the Court could not possibly hold that Hein and Associates were "vendors," within the meaning of the Order, without also holding that Hoover Slovacek is a vendor within the meaning of the Order.
>
> And there was just, you know, we are not on notice that we're not allowed to make reasonable inquiries to learned professionals.[182]

<u>Cashway</u>, 553 S.W.2d at 789-90, does not support the Schermerhorn Parties' argument that they reasonably believed the Preliminary Injunction did not prohibit them from contacting SkyPort's accountants because accountants are members of a learned profession and as such cannot be vendors. Cashway held a contest and awarded prizes to persons whose names were drawn. Appellee's

---

[182]<u>Id.</u> at 104:15-105:10.

name was drawn. Cashway refused to award Appellee the prize because he was a security guard at their store, and a rule of the contest provided that no employees, their relatives, or vendors of Cashway could register or be eligible to win a prize. The issue in Cashway was whether "'vendor' includes one who sells the services of others under rules of a prize contest which excluded employees and vendors of the sponsor." Id. at 788. The Court explained that

> [w]hile the rules of the contest required Appellee to establish that he was neither an employee nor a vendor, the trial Court required only proof that he was not an employee. The Court apparently construed "vendor" as limited to one who sells goods or property. We are of the opinion that the word "vendor" standing alone, as it is here, could include a vendor of services as well as a vendor of goods.

Id. at 789. The distinction between vendors and members of learned professions on which the Schermerhorn Parties rely is merely the Court's observation that "the Uniform Commercial Code, Article 5069-6.01, Tex. Rev. Civ. Stat. Ann., defines 'seller' as 'a person regularly and principally engaged in the business of selling goods or services to retail buyers, but does not include the services of a member of a learned profession.'" Id. at 790. The Bankruptcy Court did not err in rejecting the Schermerhorn Parties' definition of "vendor" in favor of the term's plain meaning for purposes of interpreting and enforcing the June 10, 2010, Preliminary Injunction.

The Schermerhorn Parties also attempted to justify contacting SkyPort's accountants by asserting that Weldon contacted Hein &

Associates as due diligence for filing a motion with the Bankruptcy

Court:

> THE COURT:  Mr. Goldman, I think I heard you testify before the break that the reason you made the phone call or that your associate made the phone call to the Hein Group and to Deloitte is because you were doing due diligence; am I right? Did I --

> THE WITNESS:  It was -- as I understand it, there is a Rule 11 obligation to verify facts beforehand before you file any paper with the Court and there were a whole array of facts in the documents that we were filing the request.  And one of -- and those documents included specific information from these audited reports and said, "These were audited reports" and were just trying to verify one or two bits of information from the report.

> THE COURT:  And what was the due diligence?  I mean, what lawsuit were you doing your -- what perspective lawsuit were you doing your due diligence on?

> THE WITNESS:  I can answer that question, Your Honor.

> THE COURT:  Please.

> THE WITNESS:  Your Honor, in this particular proceeding, the proceeding in this Court, there were statements made that CenturyTel had a $2.7 million secured claim and Balaton had a $1.8 million unsecured claim.  I looked at these financial statements, which I did not receive until well after the confirmation of the Plan, and I saw that the financial statements said exactly the opposite.

> MS. CATMULL:  Objection, Your Honor.  Move to strike after everything, "There were statements made" -- the question is just:  What lawsuit was he filing?

> THE COURT:  Okay.  I'll sustain the objection. Mr. Goldman, again, all I want to know is: You've testified you were doing due diligence and all I want to know is what lawsuit were you doing due diligence on?

> THE WITNESS:  On the request to this Court -- on the request to this Court to be -- for permission to file a fraud on the Court adversary, which we spent months analyzing and making sure we were doing the right thing on.  And we're trying to dot every "i" and cross every "t" to make sure that if we were going to, you know, make

"t" to make sure that if we were going to, you know, make
serious -- you know, make a request for that kind of
relief that, you know, we have verified everything.

THE COURT:  Okay.  Now, I'm looking at the Order that I
signed, which is Exhibit 17, I signed on June 10 and it
says:

> "The Plaintiffs are temporarily enjoined from
> pursuing any and all claims or causes of
> action, derivative or direct against all of
> the Defendants."

> By doing due diligence to pursue claims against the
Defendants, weren't you breaching this Order?

THE WITNESS:  Your Honor, as I understood it, the Order
says, "Subject to further Order of the Court" and all we
were doing, Your Honor, was asking for a further Order of
the Court.  I don't believe that doing due diligence is
pursuing the claim.  Pursuing the claim is something that
we ask the Court for permission to do and I don't believe
we violate the Court's injunction by asking for
permission where we think we make a very compelling
case.[183]

The Bankruptcy Court did not err by rejecting this attempted

justification as additional proof that the Schermerhorn Parties had

violated the Preliminary Injunction by continuing to pursue claims

against the state court defendants, and as a demonstration of bad

faith.[184]  Nor did the Bankruptcy Court err by concluding his ruling

on this issue by stating: "I am unhappy with what I see is

continuing misconduct of Counsel."[185]

---

[183]Transcript, October 14, 2010, Hearing, Docket Entry No. 4-
108 in Civil Action No. 4:11-cv-1524, pp. 86:3-88:11.

[184]Transcript, October 14, 2010, Hearing, Docket Entry No. 4-
110 in Civil Action No. 4:11-cv-1524, pp. 42:5-46:6.

[185]Id. at 46:7-8.

(c)   The SkyPort Parties' Cross-Appeal

The SkyPort Parties cross-appeal the Order Disposing of Docket Items 227 and 229, Docket Entry No. 261.  The SkyPort Parties argue that the Bankruptcy Court erred by determining that privilege-based redactions from counsels' invoices justified reducing the award of attorneys' fees by $1,518.75,[186] and erred by imposing a fifty percent reduction on the remaining fee request after expressing concern about lack of specificity in the time records.[187]  Asserting that "if the purpose of civil contempt awards is to compensate for the losses incurred to the other party, then $21,830.25 should have been awarded because the Bankruptcy Court found that that was the actual amount th[at SkyPort] incurred vindicating the preliminary injunction."[188]  Citing <u>Jennings v. Joshua Independent School District</u>, 948 F.2d 194, 199 (5th Cir. 1991), the SkyPort Parties argue that "[h]alving an award of all attorneys' fees incurred . . . does not indicate an exercise of discretion to find the point of least severe sanctions."[189]

The Bankruptcy Court did not abuse its discretion by imposing on Goldman and Fryar sanctions in an amount that was less than the

---

[186]Brief of SkyPort Global Communications, Inc. (n/k/a TrustComm, Inc.), Appellee/Cross-Appellant, Docket Entry No. 25 in Civil Action No. 4:11-cv-1524, pp. 46-47.

[187]<u>Id.</u> at 38 (citing excerpts from November 23, 2010, hearing, Docket Entry No. 345 in Adversary No. 10-03150, and Docket Entry No. 4-345 in Civil Action No. 4:11-cv-1524, pp. 40:17-18, 23-25; and 41:1-8).

[188]<u>Id.</u> at 46.

[189]<u>Id.</u>

full amount of fees and costs that the SkyPort Parties said they
incurred preparing and prosecuting the motion for contempt. The
purpose of sanctions is to deter future bad conduct, not to
accomplish fee-shifting in favor of a prevailing party. Although
the SkyPort Parties argue that the amount awarded was not
sufficient to deter future bad conduct because it was less than the
amounts that the Bankruptcy Court had previously ordered the
Schermerhorn Parties to pay as sanctions,[190] the previous sanctions
were imposed on the Schermerhorn Parties not, as here, on two of
their attorneys. The SkyPort Parties have not presented evidence
or argument that the amount imposed on Goldman and Fryar would not
deter them from engaging in future bad conduct. As the Bankruptcy
Court noted, portions of the fee application was problematic. Many
of the time entries had been redacted, which made it difficult if
not impossible for Goldman and Fryar to know if the entries were
related to their misconduct. Other entries appeared to be
duplicative or not sufficiently specific for the Court to determine
whether they were necessary. These circumstances differ from those
at issue in Jennings where the Court reduced the fees by fifty
percent without finding comparable problems in the time records.
Moreover, the Jennings court acknowledged that full compensation is
not a rigid requirement when fees are awarded as a sanction. Id.
at 199. The Bankruptcy Court did not abuse its discretion by

---

[190]Id. at 45.

ordering Goldman and Fryar to pay sanctions in the form of attorneys' fees and costs that were less than the full amounts the SkyPort Parties sought.

Accordingly, the Order Holding Joanne Schermerhorn et al. In Contempt of the June 10, 2010 Preliminary Injunction, Docket Entry No. 243, and the Order Disposing of Docket Items 227 and 229, Docket Entry No. 261, will both be affirmed.

    2.   The SkyPort Parties' Second Motion for Contempt

        (a)   Additional Factual and Procedural Background

On September 29, 2010, the SkyPort Parties filed an instrument titled: *Supplemental* Motion by SkyPort Global Communications, Inc. That Joanne Schermerhorn, *et al*. Appear and Show Cause Why They Should Not Be Held in Contempt of the June 10, 2010 Preliminary Injunction ("SkyPort's Second Motion for Contempt"), Docket Entry No. 184.[191]   This motion argued that the Schermerhorn Parties violated the June 10, 2010, Preliminary Injunction by continuing to pursue claims against the state court defendants.   The motion asserted:

> 10.  On September 27, 2010, . . . [r]ather than wait for the Court's ruling as to which causes of action are direct and which are derivative, the Schermerhorn Group repackaged and refiled all the same claims and called it "Plaintiffs' Request to Proceed with Adversary Proceeding for Fraud on the Court" (hereinafter referred to as the "RTPWA").  Attached to the RTPWA is a proposed 40 page complaint and another 111 pages of attached exhibits (some of which are misleadingly excerpted).

---

[191]See Docket Entry No. 4-100 in Civil Action No. 4:11-cv-1124.

11. In other words, incredibly, the Schermerhorn Group, is blatantly violating th[e] preliminary injunction by continuing to pursue claims. . . .

. . .

14. . . . the Schermerhorn Group's actions violate the spirit of the injunction, which was put in place to (i) protect *Skyport's* business relationships and prospects, (ii) protect the integrity of the bankruptcy process, and (iii) stop a collateral attack on a final confirmation order of this Court by parties who had been afforded due process but who chose to "lay behind the log" during the bankruptcy case. . .

15. Worse, the Schermerhorn Group's actions violated the letter of the temporary injunction, which states:

Therefore, it is ORDERED that until further Order of this Court, temporary injunction is granted; it is further ORDERED that Plaintiffs are temporarily enjoined from: (i) *pursuing any and all claims or causes of action, derivative or direct, against all of the Defendants,* and (ii) contacting any customers, vendors, current employees or former employees; it is further ORDERED that the Plaintiffs shall strictly comply with all terms and conditions of the Order Confirming Plan referred to above *as well as the plan* and modification attached thereto. [Emphasis added.]

16. First, deliberately serving discovery designed to investigate facts in support of the RPTWA is "pursuing" claims, contrary to the injunction.

17. Second, deliberately filing the RPTWA, with its 151 pages of scandalous allegations that must now be dealt with, is "pursuing" claims, contrary to the injunction.[192]

The SkyPort Parties sought relief in the form of an order holding each member of the Schermerhorn Group in contempt of the Preliminary Injunction, assessing attorneys' fees and costs

---

[192]*Id.* at 5-8 ¶¶ 10-17.

incurred by the SkyPort Parties in bringing and prosecuting the motion for contempt, punitive damages against the Schermerhorn Group, an order striking the September 7, 2010, filing (including the attachments thereto) from the record, and a bar on further filings.[193]

On November 29, 2010, the Bankruptcy Court held a hearing on SkyPort's Second Motion for Contempt.[194]  At the conclusion of the hearing the Bankruptcy Court found that the Schermerhorn Parties had violated the June 10, 2010, Preliminary Injunction by filing the RPTWA on September 27, 2010,[195] and by "filing Category Number 9, Document Production Request, which is set forth in today's Exhibit 10, the Plaintiff's Notice of Deposition of SkyPort Global Communications, Inc."[196]  In reaching this conclusion the Bankruptcy Court rejected the Schermerhorn Parties' argument that

---

[193]Id. at 9-10 ¶¶ 20-27.

[194]See Transcript of November 29, 2010, Hearing on SkyPort's Second Motion for Contempt, Docket Entry No. 338 in Adversary No. 10-03150, and Docket Entry Nos. 4-313 through 4-314 in Civil Action No. 4:11-cv-1524.

[195]Id.  Docket Entry No. 4-314 in Civil Action No. 4:11-cv-1524, p. 63:3-11 ("So, I make a legal conclusion that what was filed on September 27 was a violation of my June 10 preliminary injunction because it was pursuing a claim, regardless of whether it's derivative or direct, against some of the Defendants [named in the removed action]"); p. 64:10-16 ("So, I make a legal conclusion that the filing of that pleading, which was on September 27 -- let me make sure I get the Docket number right.  It's Docket Number 176, with 12 exhibits attached, constitutes a -- pursuing a claim and Cause of Action against some of the Defendants and, therefore, is a violation of my June 10, 2010, Preliminary Injunction.").

[196]Id. at 66:16-19.  See also id. at 65:2-23.

making a request to pursue a claim was not pursuing a claim, and that any violation was inadvertent.[197]

The Bankruptcy Court granted the motion for contempt, holding the Schermerhorn Parties in contempt of the June 10, 2010, Preliminary Injunction for violating the prohibition against pursuing claims, and holding them liable to SkyPort for attorneys' fees and costs incurred in the preparation and prosecution of SkyPort's Second Motion for Contempt.[198]   The rulings made at the conclusion of the November 29, 2010, hearing were reduced to writing on December 16, 2010, in the Second Order Holding Joanne Schermerhorn et al. in Contempt of the June 10, 2010 Preliminary Injunction [Docket No. 184], Docket Entry No. 267.[199]

---

[197]Id. at 63:7-11 (". . . the argument of well, but we weren't pursuing a claim.  We were seeking this Court's permission to pursue the claim, I don't accept that argument because by attaching that document with allegations of fraud, you are pursuing a claim."); 64:24-65:1 ("by filing this request, labeling it a request, and attaching the pleading is really doing [an] end run around my injunction").

[198]Id. at 66:4-14 ("So for the same reasons that I had issued and cited case law in the past about -- I mean, clearly the Fifth Circuit has said I have the right to impose sanctions, and in this case, it's remedial contempt sanctions.  That is remedial contempt damages because they'll be in the form of attorney's fees incurred by SkyPort for having to fend off -- having to take actions to deal with the request that was filed on September 27, 2010, to file the new suit, and for dealing with Category 9.  So, I am going to award attorney's fees and my remedial contempt damages here.").

[199]Docket Entry No. 4-121 in Civil Action No. 4:11-cv-1524. Because Goldman agreed to pay $9,663.53 in attorneys' fees, neither the amount nor the payment of these fees has been in dispute.  See Notice of Receipt of Check for $9,663.53 from Sam Goldman, Docket Entry No. 268 in Adversary No. 10-03150, and Docket Entry No. 4-294 in Civil Action No. 4:11-cv-1524, signed by Hoover Slovacek and dated December 16, 2010.

(b)   The Schermerhorn Parties' Appeal

Asserting that they reasonably relied on "several cases by the United States Supreme Court and the Fifth Circuit to establish that they had a reasonable basis for believing that the 'fraud on the court' complaint was strongly supported by existing law,"[200] the Schermerhorn Parties argue that the Bankruptcy Court erred by holding them in contempt for filing a request to file a "fraud on the Court" complaint.[201]   The Schermerhorn Parties argue

> the actions prohibited by the June 10 Preliminary Injunction were to stay in effect "until further order of" the Bankruptcy Court. . . . Therefore, in conjunction with the Bankruptcy Court's previous findings at the May 27, 2010 Hearing that the improprieties during the Bankruptcy Case by Kubbernus, et al. should have been brought before the Bankruptcy Court by the Schermerhorn Parties, the Schermerhorn Parties sought "further order" and filed their Request.   Despite doing what the Bankruptcy Court said it should have done, SkyPort — once again taking advantage of the situation — filed its Supplemental Motion for Contempt alleging that the Request violated the June 10 Preliminary Injunction. . . . The Schermerhorn Parties were surprised when the Bankruptcy Court held that their mere request to file a "fraud on the court" complaint was in violation of the June 10 Preliminary Injunction and sanctioned counsel for the Schermerhorn Parties and then struck the pleading from the record.[202]

The Schermerhorn Parties' argument that the Bankruptcy Court erred by finding them in contempt of the June 10, 2010, Preliminary Injunction has no merit.   As the Bankruptcy Court explained at the November 29, 2010, hearing:

---

[200]Brief of Appellants - The Schermerhorn Parties, Docket Entry No. 16 in Civil Action No. 4:11-cv-1524, p. 53.

[201]Id. at 52.

[202]Id.

> [M]y temporary injunction of June 10 was meant to say, "Sit down and shut up, Plaintiffs, until I figure out what's derivative and what's direct."
>
> And I don't know how I could have been any clearer in my June 10th ruling is that until further order of this Court, the Temporary Injunction is granted.  I can assure you, you know, spending the amount of time I have on derivative and direct has -- has certainly been educational, and it's my job, but you know, that was an absolute freeze order, and by filing the request on September 27, to which is attached this lengthy, lengthy, lengthy, proposed lawsuit which contains serious allegations about fraud, was a violation and I so find of my Order of June 10, 2010, because it says:
>
>> "The Plaintiffs are temporarily enjoined from pursuing any and all claims or causes of action, derivative or direct, against all of the Defendants."
>
> And clearly that proposed Complaint attached to the Request filed on September 27, 2010, was aimed at making claims against the Defendants, or at least some of the Defendants, that were named in the State Court suit that was removed to this Court and which is now the pending adversary proceeding.[203]

Accordingly, the Second Order Holding Joanne Schermerhorn et al. in Contempt of the June 10, 2010 Preliminary Injunction [Docket No. 184], Docket Entry No. 267, will be affirmed.

> 3.   The SkyPort Parties' Third Motion for Contempt

> (a)   Additional Factual and Procedural Background

On July 13, 2011, the SkyPort Parties filed an instrument titled:  Motion by SkyPort Global Communications, Inc. (1) That Joanne Schermerhorn, et al, Sam Goldman, and Franklin Craig Show Cause Why They Should Not Be Held in Contempt of the June 10, 2010,

---

[203]Transcript of November 29, 2010, Hearing, Docket Entry No. 338 in Adversary No. 10-03150, and Docket Entry No. 4-314 in Civil Action No. 4:11-cv-1524, pp. 62:5-63:2.

Preliminary Injunction, and (2) That Sam Goldman, Franklin Craig, an Officer of Sequoia Aggressive Growth Fund, Ltd., an Officer of Sequoia Diversified Growth Fund, Ltd., an Officer of Rig Fund III, Ltd., an Officer of Aran Asset Management SA, and an Officer of Semper Gestion SA Appear in Person Before This Court on August 5, 2011 at 9:00 A.M. ("SkyPort's Third Motion for Contempt"), Docket Entry No. 359 in Adversary No. 10-03150.[204]   This motion alleged numerous violations of the June 10, 2010, Preliminary Injunction, and sought sanctions against: (1) the Schermerhorn Parties, Franklin Craig, and Samuel Goldman for unauthorized contact with Dawn Cole, SkyPort's former president; (2) Goldman for testifying falsely at the October 14, 2010, hearing that he had not communicated with Cole since June 10, 2010; and (3) the Schermerhorn Parties and their attorneys -- Goldman and Fryar -- for failing to file an amended petition in state court allegedly in violation of the remand order.[205]   The SkyPort Parties sought relief in the form of an order holding each member of the Schermerhorn Group, Franklin Craig, and Sam Goldman in contempt of the Preliminary Injunction; an order separately sanctioning Goldman for his October 14, 2010, testimony; attorneys' fees and costs incurred bringing and prosecuting SkyPort's Third Motion for Contempt, responding to the State Court Petition and discovery, responding to the motion to dissolve, and prosecuting a permanent injunction;

---

[204]Docket Entry No. 2-114 in Civil Action No. 4:13-cv-3041.

[205]Id. at 3-4 ¶¶ 6-9.

punitive damages; and an order directing the Schermerhorn Parties to post a bond.[206]

On March 8, 2012, the Bankruptcy Court began a hearing on, inter alia, the SkyPort Parties' Third Motion for Contempt, which continued on March 9, April 18 and 20, May 1 and 2, June 5 and 6, August 28, 29, and 30, November 27, 28, 29, and 30, 2012, and on January 25 and February 7, 2013.[207]   At the conclusion of the

---

[206]Id. at 10-11 ¶¶ 26-32.

[207]See Entries for these dates on Docket Sheet for Adversary No. 10-03150, Docket Entry No. 2-6 in Civil Action No. 4:13-cv-3041. See also the following table reflecting the excerpts from these hearing dates included in the Record on Appeal in Civil Action No. 4:13-cv-3041:

| Hearing Date | Docket Entry No. in Adversary No. 10-03150 | Docket Entry No. in Civil Action No. 4:13-cv-3041 |
|---|---|---|
| March 8, 2012 | 575 | 2-206 |
| March 9, 2012 | 579 | 2-207 |
| April 18, 2012 | 600 | 2-209 |
| April 20, 2012 | 601 | 2-210 |
| May 1, 2012 | 607 | 2-211 |
| May 2, 2012 | 608 | 2-212 |
| June 5, 2012 | 613 | 2-213 |
| June 6, 2012 | 614 | 2-214 |
| August 28, 2012 | 626 | 2-215 |
| August 29, 2012 | 627 | 2-216 |
| August 30, 2012 | 628 | 2-217 |
| November 27, 2012 | 641 | 2-220 |
| November 28, 2012 | 642 | 2-221 |
| November 29, 2012 | 643 | 2-222 |
| November 30, 2012 | 647 | 2-224 |
| January 25, 2013 | 664-665 | 2-234 - 2-235 |
| February 7, 2013 | 673 | 2-237 |

February 7, 2013, hearing, the Bankruptcy Court took the issues raised under advisement.[208]

On August 7, 2013, the Bankruptcy Court entered a 187-page Memorandum Opinion Regarding Adversary Docket Numbers 317; 359; 360; 419; 460 and 461 ("Memorandum Opinion on Contempt"), and corresponding Order Regarding Adversary Docket Numbers 317; 359; 360; 419; 460 and 461 ("Third Order of Contempt"),[209] finding Goldman and Craig to be in contempt of court and awarding sanctions in the form of attorneys' fees and costs against them.[210]

On August 15, 2013, the Bankruptcy Court held a hearing on the reasonableness of the attorneys' fees and expenses incurred by the SkyPort Parties in connection with SkyPort's Third Motion for Contempt,[211] and on September 13, 2013, the Bankruptcy Court issued Findings of Fact and Conclusions of Law Regarding the Amount of

---

[208]Transcript of February 7, 2013, Hearing, Docket Entry No. 673 in Adversary No. 10-03150, and Docket Entry No. 2-237 in Civil Action No. 4:13-cv-3041, p. 161:3-7 ("All right.  I'm going to take the matter under advisement.  I certainly need to look at a lot of the Exhibits and reflect on your thoughts.  So the burden's on me and I'll work on it as quickly as I can to get an answer to you-all.").

[209]See Docket Entry Nos. 690 and 691 in Adversary No. 10-03150, and Docket Entry Nos. 2-245 and 2-246 in Civil Action No. 4:13-cv-3041, respectively.

[210]Memorandum Opinion on Contempt, Docket Entry No. 690 in Adversary No. 10-03150, and Docket Entry No. 2-245 in Civil Action No. 4:13-cv-3041, pp. 179-86.

[211]See Docket Sheet for Adversary No. 10-03150, Docket Entry No. 2-6 in Civil Action No. 4:13-cv-3041, entries on the referenced date.

Fees and Expenses Awarded to the SkyPort Parties [Adv. Doc. No. 691], Docket Entry No. 704, and a corresponding Order, Docket Entry No. 705, granting $105,335.00 in attorneys' fees and $32,178.18 in expenses for a total amount of $137,513.18.[212]

The August 7, 2013, Memorandum Opinion on Contempt and Third Order of Contempt, Docket Entry Nos. 690 and 691 in Adversary No. 10-03150, and the September 13, 2013, Findings of Fact and Conclusions of Law Regarding the Amount of Fees and Expenses Awarded to the SkyPort Parties and corresponding Order, Docket Entry Nos. 704-705 in Adversary No. 10-03150, have been appealed by Goldman in Civil Action No. 4:13-cv-3041, Craig in Civil Action No. 4:13-cv-3044, and cross-appealed by the SkyPort Parties in Civil Action No. 4:13-cv-3047.

(b)   The Goldman and Craig Appeals

Goldman and Craig argue that the Bankruptcy Court erred by issuing the Memorandum Opinion on Contempt and Third Order of Contempt holding them in contempt of the June 10, 2010, Preliminary Injunction, and the Findings of Facts and Conclusions of Law and corresponding Order directing them to pay $105,335.00 in attorneys' fees and $32,178.18 in expenses for a total amount of $137,513.18, because: (1) the Preliminary Injunction is void and unenforceable; (2) the order was for criminal contempt for which the Bankruptcy

_____

[212]Docket Entry Nos. 2-252 and 2-253 in Civil Action No. 4:13-cv-3041, respectively.

Court lacked jurisdiction; (3) neither Goldman nor Craig violated the Preliminary Injunction; (4) the contempt order was unwarranted because the Preliminary Injunction was dissolved; (5) the order directing them to pay attorneys' fees and costs was unwarranted because neither compensatory nor coercive relief was granted; and (6) the attorneys' fees and costs assessed were not reasonable and necessary.[213]   These arguments have no merit.

> **(1)   The Bankruptcy Court Did Not Err by Granting SkyPort's Third Motion for Contempt Because the Preliminary Injunction Is Neither Void Nor Unenforceable by Contempt**

Citing Federal Rule of Civil Procedure 65(d), Goldman and Craig argue that the Bankruptcy Court erred by granting the SkyPort Parties' Third Motion for Contempt because the Preliminary Injunction is void and unenforceable by contempt.   Goldman and Craig argue that the Preliminary Injunction is unenforceable by contempt because it fails to state with sufficient specificity the reasons why it was issued, the persons to whom it applies, and the acts enjoined and, therefore, fails to comply with Rule 65.[214]   This argument has no merit because the way to challenge an injunction is by direct appeal or by a motion to modify.   See GTE Sylvania, Inc. v. Consumers Union of United States, Inc., 100 S. Ct. 1194, 1202

---

[213]Brief of Appellants Samuel Goldman and Franklin Craig, Docket Entry No. 26 in Civil Action No. 4:13-cv-3041 ("Appellants' Brief").

[214]Id. at 23-26.

(1980) ("[p]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order."). Neither Goldman, Craig, nor any of the other parties in these related actions ever objected to the Preliminary Injunction either by appealing it or by moving to modify it. See In re Timmons, 607 F.2d 120, 124-25 (5th Cir. 1979) (recognizing that remedy for an incorrect order is an appeal, and absent a stay even incorrect orders must be complied with until decreed invalid).

### (2) The Bankruptcy Court Did Not Err by Finding that Contempt Proceeding Was Civil — Not Criminal

Goldman and Craig argue that the Bankruptcy Court erred by granting the SkyPort Parties' Third Motion for Contempt because "the contempt proceeding in this case was in substance a citation of criminal contempt and thus the Bankruptcy Court had no jurisdiction."[215]   Goldman and Craig argue that the contempt proceeding at issue was criminal in substance because

> [t]he Third Contempt Motion lists various alleged violations of the Preliminary Injunction, but does not identify any injury suffered as a result of the alleged violations, nor does the motion describe any ongoing threatened violations or any need to address ongoing violations.[216]

---

[215]Id. at 26.

[216]Id. at 27.

Goldman and Craig argue that "[w]ith no damages to remedy and no injunction to enforce, the two purposes of a civil contempt proceeding were absent and the only possible purpose of the proceeding was to punish the respondents, and this was, therefore, a criminal contempt proceeding."[217] This argument has no merit.

In determining whether a contempt order is civil or criminal, the trial court's characterization is relevant, but not conclusive. Smith v. Sullivan, 611 F.2d 1050, 1053 (1980).   Properly characterizing an order as civil or criminal depends on its primary purpose.  Id.  See also In re Bradley, 588 F.3d 254, 263 (5th Cir. 2009) (citing Lamar Financial Corp. v. Adams, 918 F.2d 564, 566 (5th Cir. 1990)).  If the purpose of the order is "to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal."  In re Bradley, 588 F.3d at 263.  If instead the purpose of the order is "to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil." Id. (citing Adams, 918 F.2d at 566).

The Bankruptcy Court characterized its order as civil,[218] and explained that the award of attorneys' fees and costs ordered was

_____

[217]Id. at 29.

[218]Memorandum Opinion on Contempt, Docket Entry No. 690 in Adversary No. 10-03150, and Docket Entry No. 2-245 in Civil Action No. 4:13-cv-3041, p. 179.

intended to compensate the SkyPort Parties for the reasonable fees
and expenses incurred preparing and prosecuting the motion for
contempt.[219]   This case therefore does not concern either punitive
criminal contempt or coercive civil contempt; instead, it concerns
compensatory or remedial civil contempt. In Bradley the Fifth
Circuit explained that

> "[c]ivil contempt can serve two purposes," either
> coercing compliance with an order or "compensat[ing] a
> party who has suffered unnecessary injuries or costs
> because of contemptuous conduct.". . Like criminal
> contempt, remedial civil contempt is backward-looking.
> But remedial contempt is civil, because it remedies the
> consequences of defiant conduct on an opposing party,
> rather than punishing the defiance per se. It . . . does
> not require the special safeguards that accompany
> criminal contempt proceedings, such as establishment of
> mens rea and proof beyond a reasonable doubt.

588 F.3d at 263-64 (citations omitted).

The third contempt proceeding in this action was a remedial
civil contempt proceeding because the Bankruptcy Court held Goldman
and Craig liable to the SkyPort Parties for the attorneys' fees and
costs that they reasonably incurred responding to the contempt and
did not impose a fine payable to the court.   In re Bradley, 588
F.3d at 264 ("The present proceeding is a remedial civil contempt
proceeding, because the bankruptcy court held Beutel liable to the

---

[219]Id. at 182 (citing Mooney v. Green Tree Servicing, LLC
(In re Mooney), 340 B.R. 351, 361 (Bankr. E.D. Tex. 2006)), and 186
("the court will impose the above-described sanctions on Goldman
and Craig — but not the Schermerhorn Parties — to ensure that the
SkyPort Parties are reimbursed for the reasonable attorneys' fees
and expenses that they incurred for bringing Goldman and Craig's
contempt to this court's attention").

bankruptcy estate rather than imposing a fine payable to the court."); In re Mooney, 340 B.R. at 361 (recognizing award of attorneys' fees incurred to prosecute contempt proceeding as compensatory). The court concludes that the Bankruptcy Court's contempt proceeding and resulting order were civil, notwithstanding Goldman's and Craig's characterization of them as criminal.

### (3)   The Bankruptcy Court Did Not Err by Finding that Goldman and Craig Violated the Preliminary Injunction

Goldman and Craig argue that the Bankruptcy Court erred by holding them in contempt because their conduct did not violate the Preliminary Injunction as they understood it.[220] In support of this argument Goldman and Craig argue that the Preliminary Injunction did not enjoin Craig, and that they did not violate the Preliminary Injunction's prohibition against pursuing claims or contacting certain parties only with permission, e.g., Dawn Cole. The elements of civil contempt are: "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." In re Bradley, 588 F.3d at 264 (citations omitted). The Preliminary Injunction undisputedly enjoined contact with past and present SkyPort employees.

---

[220]Appellants' Brief, Docket Entry No. 26 in Civil Action No. 4:13-cv-3041, pp. 39-49.

Goldman and Craig argue that the Preliminary Injunction did not enjoin Craig because it applied only to the "Plaintiffs," meaning the Schermerhorn Parties, and Craig was not a plaintiff.[221] The Bankruptcy Court held that Craig, who was not a party to the lawsuit, was nevertheless bound by the Preliminary Injunction because he had actual notice of it and acted in concert with Goldman to thwart it, as evidenced by references to it in e-mails that he exchanged with Goldman.[222] The Bankruptcy Court concluded,

> In sum, Goldman and Craig's conspiracy to thwart the Preliminary Injunction Order was blatant and frequent, occurring over the course of *many* e-mails and phone calls. The facts unmistakenly show that Craig's actions were not independent or gratuitous, but in conjunction and in concerted effort with Goldman.[223]

Goldman's and Craig's argument that Craig was not bound by the Preliminary Injunction has no merit because pursuant to Federal Rule of Civil Procedure 65(d)(2), "[o]rders granting injunctions bind 'the parties' officers, agents, servants, employees, and attorneys' and 'other persons who are in active concert' with them or with the parties." Seven Arts Pictures, 512 Fed. App'x at 426 (quoting Rule 65(d)(2)).  Although Rule 65(d)(2) also provides that persons to be bound must "receive actual notice" of the order "by personal service or otherwise," Craig does not dispute that he received actual notice of the Preliminary Injunction.

---

[221]Id. at 40.

[222]Memorandum Opinion on Contempt, Docket Entry No. 2-245 in Civil Action No. 4:13-cv-3041, pp. 139-45.

[223]Id. at 145.

Nor can Craig argue that he did not know that the Preliminary Injunction prohibited contact with SkyPort's former president, Dawn Cole.  At the March 8, 2012, hearing, Craig admitted that he was aware of the injunction on the day it was issued, that he was aware that the injunction prohibited the Schermerhorn Parties and their attorneys from contacting SkyPort's employees and former employees, and that since at least September of 2009 he knew that Dawn Cole was employed by SkyPort.[224]  Although Goldman and Craig argue that it was reasonable for Craig to believe that the Preliminary Injunction applied only to the named parties and their attorneys, but not to him, the content of e-mails that Craig exchanged with Goldman show that Craig knew that his actions as an intermediary between Goldman and Cole were improper.[225]  Moreover, the brief that Goldman and Craig filed with this court acknowledges that Goldman "repeatedly told Craig not to contact [Cole]."[226]  Accordingly, the Bankruptcy Court did not err by concluding that Craig was bound by the Preliminary Injunction.

---

[224]See Transcript, Docket Entry No. 575 in Adversary No. 10-03150, and Docket Entry No. 2-206 in Civil Action No. 4:13-cv-3140, p. 93:3-9 and p. 111:9-20.

[225]See e-mails exchanged between Craig and Goldman during July and August of 2010 regarding Cole cited by the Bankruptcy Court in the Memorandum Opinion on Contempt, Docket Entry No. 690 in Adversary No. 10-03150, and Docket Entry No. 2-245 in Civil Action No. 4:13-cv-3041, pp. 142-45.

[226]Appellants' Brief, Docket Entry No. 26 in Civil Action No. 4:13-cv-3041, p. 49.

Goldman's and Craig's argument that they did not violate the Preliminary Injunction against contacting certain parties only with permission has no merit because they do not dispute that they were in contact with SkyPort's former president, Dawn Cole, during the period that the Preliminary Injunction was in force.   Their brief to this court acknowledges:

> After the Preliminary Injunction was entered, Goldman ceased communications with Cole out of an abundance of caution, with one inadvertent exception. [*See* Item 245, Opinion, p. 50, ¶¶ 70-72].   On July 23, 2010, Goldman mistakenly sent an email to Craig *and* Cole, saying, "Try my cell," by pressing, "reply all."   [*Id.* at 50, ¶ 70].   When Cole responded, Goldman wrote: "Sorry, I meant for Franklin to call.   We are still enjoined from contacting you."   [*Id.* at 50, ¶¶ 71-72].   After the Preliminary Injunction was entered, Goldman also repeatedly warned Craig not to contact Cole out of an abundance of caution.   [*See* Item 129, at 22-24].[227]

Because Goldman is one of the attorneys of record for the Schermerhorn Parties who signed the Preliminary Injunction, he cannot argue either that he did not know about the injunction or that he did not understand its scope.   Nor can he argue that he did not know that the injunction applied to contact with Dawn Cole.   At the May 27, 2010, hearing on whether to enter a preliminary injunction, Robert Kubbernus testified about the Schermerhorn Parties' worrisome contacts with former employees including, <u>inter alia</u>, Dawn Cole.[228]   Goldman cross-examined Kubbernus at that

_____

[227]<u>Id.</u> at 19.

[228]Transcript, May 27, 2010, Hearing, Docket Entry No. 75 in Adversary No. 10-03150, and Docket Entry No. 4-41 in Civil Action No. 4:11-cv-1524, p. 107:13-25.

hearing about Dawn Cole.[229]   Thus, in May of 2010, approximately two months before he engaged in the contact with Dawn Cole for which he was held in contempt of the Preliminary Injunction, Goldman knew that SkyPort sought the injunction to prevent just such contact with Dawn Cole.   Moreover, any contention that Goldman and Craig did not reasonably believe that their contact with Cole violated the Preliminary Injunction is belied by the content of their e-mails.[230]   See McComb v. Jacksonville Paper Co., 69 S. Ct. 497, 500 (1949) ("It does not lie in their mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined.  Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law which we condemned in [Maggio v. Zeitz, 68 S. Ct. 401, 408 (1948)].").  Accordingly, the Bankruptcy Court did not err by concluding that Goldman and Craig were both bound by the Preliminary Injunction and that they acted in concert to thwart it.

### (4)   The Bankruptcy Court Did Not Err by Assessing Civil Contempt Sanctions

Goldman and Craig argue that the Bankruptcy Court erred by assessing sanctions for civil contempt because the Preliminary

---

[229]Id. at 132:4-134:3 (Goldman cross-examining Kubbernus about Dawn Cole).

[230]See e-mails exchanged between Craig and Goldman during July and August of 2010 regarding Cole cited by the Bankruptcy Court in the Memorandum Opinion on Contempt, Docket Entry No. 690 in Adversary No. 10-03150, and Docket Entry No. 2-245 in Civil Action No. 4:13-cv-3041, pp. 142-45.

Injunction was dissolved, and because the SkyPort Parties were not harmed by any violation of the Preliminary Injunction.[231]   These arguments have no merit because it is undisputed that (1) the Preliminary Injunction was in force when the violations for which the Bankruptcy Court held Goldman and Craig in contempt occurred, (2) the Preliminary Injunction remained in force until after the Bankruptcy Court held Goldman and Craig in contempt, and (3) the Preliminary Injunction has never been challenged or held invalid. See In re Bradley, 588 F.3d at 264 (recognizing that the elements of civil contempt are that a court order was in effect, that the order required certain conduct by the respondent, and that the respondent failed to comply with the court's order).

### (5)   The Bankruptcy Court Did Not Err by Ordering Payment of Attorneys' Fees and Costs

Goldman and Craig argue that the Bankruptcy Court erred by ordering payment of attorneys' fees and costs because neither compensatory nor coercive relief was granted.   This argument has no merit because the attorneys' fees and costs were awarded to compensate the SkyPort Parties for preparing and prosecuting the motion for contempt.[232]   See N.L.R.B. v. Trailways, Inc., 729 F.2d

---

[231]Appellants' Brief, Docket Entry No. 26 in Civil Action No. 4:13-cv-3041, p. 30.

[232]Memorandum Opinion on Contempt, Docket Entry No. 690 in Adversary No. 10-03150, and Docket Entry No. 2-245 in Civil Action No. 4:13-cv-3041, p. 182 (citing In re Mooney, 340 B.R. at 361), (continued...)

1013, 1024 (5th Cir. 1984) (recognizing that courts may order a contemnor to pay "*all* costs and expenses, including reasonable attorney's fees, incurred by the [prevailing party] in the investigation, preparation, presentation, and final disposition" of a contempt proceeding).  See also F.D.I.C. v. LeGrand, 43 F.3d 163, 169 (5th Cir. 1995) (characterizing order to pay attorneys' fees as type of remedial relief that could be awarded for civil contempt); Dow Chemical Co. v. Chemical Cleaning, Inc., 434 F.2d 1212, 1215 (5th Cir. 1970) ("[t]here are contempt cases in abundant number holding that a court has discretion to award reasonable attorney's fees and other expenses necessary to make an innocent party whole").  See also McComb, 69 S. Ct. at 500 ("The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief.").

### (6)   The Bankruptcy Court Did Not Err by Ordering Payment of Attorneys' Fees and Costs In the Amounts Assessed

On August 15, 2013, the Bankruptcy Court held a hearing on the reasonableness of the fees and expenses incurred by the SkyPort Parties in connection with their Third Motion for Contempt.  The SkyPort Parties requested attorneys' fees of $457,313.50 for 3,672

---

[232](...continued)
and p. 186 ("the court will impose the above-described sanctions on Goldman and Craig — but not the Schermerhorn Parties — to ensure that the SkyPort Parties are reimbursed for the reasonable attorneys' fees and expenses that they incurred for bringing Goldman and Craig's contempt to this court's attention").

hours of services, and $35,774.31 in expenses incurred from June 13, 2010, through June 6, 2013. On September 13, 2013, the Bankruptcy Court issued the Findings of Fact and Conclusions of Law Regarding the Amount of Fees and Expenses Awarded to the SkyPort Parties [Adv. Doc. No. 691], Docket Entry No. 704, and a corresponding Order, Docket Entry No. 705, granting $105,335.00 in attorneys' fees and $32,178.18 in expenses for a total amount of $137,513.18.[233]

Goldman and Craig argue that the Bankruptcy Court erred by ordering payment of attorneys' fees and costs that were not reasonable and necessary.[234] Asserting that "[t]he most important of the Johnson factors is 'the amount involved and the result obtained,'"[235] Goldman and Craig argue that although "[t]he Bankruptcy Court did purport to consider 'the results obtained,'"[236] the court relied on circular reasoning. The Bankruptcy Court stated:

> The Court does conclude that the lodestar fee should be adjusted based on its consideration of the final Johnson factor — namely, the results obtained in the litigation. In prosecuting the Motion for Contempt, the SkyPort Parties sought (1) reimbursement for their attorney's

---

[233]Docket Entry Nos. 2-252 and 2-253 in Civil Action No. 4:13-cv-3041, respectively.

[234]Appellants' Brief, Docket Entry No. 26 in Civil Action No. 4:13-cv-3041, p. 37.

[235]Id.

[236]Id. at 38.

-112-

fees and costs; (2) sanctions for the Schermerhorn Parties; (3) a coercive bond against future violations; and (4) punitive damages. However, the Court only awarded attorney's fees and costs to the SkyPort Parties. Because the Court awarded the SkyPort Parties only one of the four requests sought, the Court concludes that a 75% reduction in the lodestar fee is appropriate. Accordingly, the Court reduces the lodestar fee from $429,310.00 to $107,327.50 (i.e., $429,510.00 x .025 = $107,327.50).[237]

Goldman and Craig argue that the award of attorneys' fees is based on circular reasoning because "the Bankruptcy Court found that the SkyPort Parties should be awarded attorney's fees for no reason other than they succeeded in recovering attorney's fees."[238]   This argument has no merit.   Goldman and Craig do not argue that the amount of attorneys' fees and costs awarded were not reasonable for preparing and prosecuting the motion pursuant to which the Bankruptcy Court found them in contempt of the Preliminary Injunction.   Accordingly, Goldman and Craig have failed to establish that the attorneys' fees and costs assessed were not reasonable and necessary.

(c)   The SkyPort Parties' Cross-Appeal

The SkyPort Parties argue that the Bankruptcy Court erred by: (1) declining to permanently enjoin the Schermerhorn Parties from

---

[237]Fee Findings, Docket Entry No. 704 in Adversary No. 10-03150, and Docket Entry No. 2-252 in Civil Action No. 4:13-cv-3041, pp. 19-20.

[238]Appellants' Brief, Docket Entry No. 26 in Civil Action No. 4:13-cv-3041, p. 38.

pursuing claims that were released and enjoined by the Chapter 11 Plan; (2) reducing their fee requests by 75%; (3) failing to find that Craig is a Schermerhorn Party or a Party agent; and (4) declining to take an adverse inference when Schermerhorn Parties failed to appear for trial.[239]

The SkyPort Parties' argument that the Bankruptcy Court erred by failing to find that Craig was a Schermerhorn Party has no merit because the term "Schermerhorn Parties" is used throughout this case to refer to the fifty-one plaintiffs named in the state court case, and Craig is not one of those fifty-one plaintiffs.[240]

The SkyPort Parties' argument that the Bankruptcy Court erred by failing to take an adverse inference when the Schermerhorn Parties failed to appear for trial and by failing to permanently enjoin them from pursuing claims that were released and enjoined by the Chapter 11 Plan has no merit because the SkyPort Parties have neither alleged nor adduced evidence showing that any of the fifty-one plaintiffs referred to as the "Schermerhorn Parties" violated the Preliminary Injunction.

---

[239]Brief of Trustcomm, Inc. f/k/a SkyPort Global Communications, Inc., Robert Kubbernus, Balaton Group, Inc., Bankton Financial Corporation, LLC and Bankton Financial Corporation, Appellees/Cross-Appellants ("SkyPort's Brief for Cross-Appeal"), Docket Entry No. 36 in Civil Action No. 4:13-cv-3041.

[240]See Memorandum Opinion on Contempt, Docket Entry No. 690 in Adversary No. 10-03150 and Docket Entry No. 2-245 in Civil Action No. 4:13-cv-3041, p. 4 ¶ 3.

The SkyPort Parties' argument that the Bankruptcy Court misapplied the Johnson factors by reducing their attorneys' fee award below the lodestar amount due to their lack of success has no merit because the Fifth Circuit has recognized "the degree of success obtained" as "the most critical" of the Johnson factors. Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998) (citing Johnson, 488 F.2d at 714). The SkyPort Parties argue that the Bankruptcy Court should not have relied on a purely mathematical approach, awarding one-quarter of their claimed attorneys' fees because they prevailed on one out of four claims, but fail to articulate a better approach that would more accurately reflect reasonable attorneys' fees for achieving the result obtained, i.e., the order of contempt against Goldman and Craig, but not against all 51 of the Schermerhorn Parties.[241] Accordingly, the court concludes that the Bankruptcy Court did not err by determining that the amount of attorneys' fees and costs awarded were the fees and costs reasonably necessary to obtain the results obtained, i.e., the order of contempt against Goldman and Craig.

---

[241]See SkyPort's Brief for Cross-Appeal, Docket Entry No. 36 in Civil Action No. 4:13-cv-3041, pp. 17-23 (arguing that SkyPort is entitled to full amount of attorneys' fees sought because degree of success obtained is subsumed into the lodestar method for calculating fees awards, and because the Bankruptcy Court erred by failing to grant other forms of relief sought).

## V.  **Conclusions and Order**[242]

For the reasons explained in § IV.B.1-3(a), above, the Bankruptcy Court's Order Regarding Reasonableness of Hoover Slovacek, LLP Fees (Doc. 132) and Continuance of Hearing on Motion for Additional Sanctions (Doc. 104), filed August 11, 2010 (Docket Entry No. 158 in Adversary No. 10-03150), is **AFFIRMED.**

For the reasons explained in § IV.B.1-3(a), above, the Order Directing the Joanne Schermerhorn et al. to Pay $17,800.29 to Hoover Slovacek LLP by October 31, 2010, filed October 29, 2010 (Docket Entry No. 233 in Adversary No. 10-03150), is **AFFIRMED.**

For the reasons explained in § IV.B.1-2 and 3(c), above, the Order Awarding Additional Sanctions Against Joanne Schermerhorn et al. [Docket No. 104], filed November 9, 2010 (Docket Entry No. 242 in Adversary No. 10-03150), is **AFFIRMED.**

For the reasons explained in § IV.C.1, above, the Order Holding Joanne Schermerhorn et al. In Contempt of the June 10, 2010

---

[242]The court has allowed the parties extraordinary leeway in submitting lengthy briefs and other written materials in connection with the pending appeals and cross-appeals. As the length of this Memorandum Opinion and Order indicates, the court has expended considerable time reading these papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments. While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion. Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments they have previously raised or that they could have raised.

Preliminary Injunction [Docket Nos. 173 and 177], filed November 9, 2010 (Docket Entry No. 243 in Adversary No. 10-03150), is **AFFIRMED**.

For the reasons explained in § IV.C.1, above, the Order Disposing of Docket Items 227 and 229, filed December 7, 2010 (Docket Entry No. 261 in Adversary No. 10-03150), is **AFFIRMED**.

For the reasons explained in § IV.C.2, above, the Second Order Holding Joanne Schermerhorn et al. in Contempt of the June 10, 2010 Preliminary Injunction [Docket No. 184], filed December 16, 2010 (Docket Entry No. 267 in Adversary No. 10-03150), is **AFFIRMED**.

For the reasons explained in § III, above, the Order Denying in Part and Continuing in Part Defendant Wilson Vukelich LLP's Motion to Dismiss [Adv. Docket No. 69], filed January 13, 2011 (Docket Entry No. 273 in Adversary No. 10-03150), is **AFFIRMED**.

For the reasons explained in § III, above, the Order filed March 31, 2011 (Docket Entry No. 297 in Adversary No. 10-03150), is **AFFIRMED**.

For the reasons explained in § III, above, the Order [Docket No. 293] filed March 31, 2011 (Docket Entry No. 298 in Adversary No. 10-03150), is **AFFIRMED**.

For the reasons explained in § IV.B.1-2 and 3(b), above, the Memorandum Opinion Regarding: (1) Notice of Filing of Redacted Fee Statements of McKool Smith P.C.; (2) Plaintiffs' Certification/ Amended Certification on Reasonableness of Fees Submitted by McKool Smith P.C.; and (3) Defendants' Motion for Additional Sanctions

[Adv. Doc. Nos. 87, 107, 112 & 103], filed on March 31, 2011 (Docket Entry No. 299 in Adversary No. 10-03150), is **AFFIRMED**.

For the reasons explained in § IV.B.1-2 and 3(b), above, the Order Relating to: (1) Notice of Filing of Redacted Fee Statements of McKool Smith P.C.; (2) Plaintiffs' Certification/Amended Certification on Reasonableness of Fees Submitted by McKool Smith P.C.; and (3) Defendants' Motion for Additional Sanctions [Adv. Doc. Nos. 87, 107, 112 & 103], filed on March 31, 2011 (Docket Entry No. 300 in Adversary No. 10-03150), is **AFFIRMED**.

For the reasons explained in § IV.C.3, above, the Memorandum Opinion Regarding Adversary Docket Numbers 317; 359; 360; 419; 460 and 461 [Adv. Doc. Nos. 317, 359, 360, 419, 460, 461], filed August 7, 2013 (Docket Entry No. 690 in Adversary No. 10-03150), is **AFFIRMED**.

For the reasons explained in § IV.C.3, above, the Order Regarding Adversary Docket Numbers 317; 359; 360; 419; 460 and 461 [Adv. Doc. Nos. 317, 359, 360, 419, 460, 461], filed August 7, 2013 (Docket Entry No. 691 in Adversary No. 10-03150), is **AFFIRMED**.

For the reasons explained in § IV.C.3, above, the Findings of Fact and Conclusions of Law Regarding the Amount of Fees and Expenses Awarded to the SkyPort Parties [Adv. Doc. No. 691], filed September 13, 2013 (Docket Entry 704 in Adversary No. 10-03150), is **AFFIRMED**.

For the reasons explained in § IV.C.3, above, the Order Regarding the Amount of Fees and Expenses Awarded to the SkyPort Parties [Adv. Doc. No. 691], entered on September 13, 2013 (Docket Entry No. 705 in Adversary No. 10-03150), is **AFFIRMED**.

**SIGNED** at Houston, Texas, on this 26th day of March, 2015.

SIM LAKE
UNITED STATES DISTRICT JUDGE